[ PHILADELPHIA, FEBRUARY 15TH, 1840. ]

## OSBORNE'S ESTATE.

5wh267
161  453

#### APPEAL.

1. An assignment for the benefit of creditors directed the apportionment of the fund to them according to a certain order, viz., 1st, to the payment of a note for a certain amount to T. S. 2d, To the payment of a note for a certain amount to J. V. 3d, To " pay and discharge $225, due and owing to A., C., B. & Co.," by the assignor. It appeared on a hearing before an auditor, that A., C., B. & Co. claimed to be creditors for money lent, and on other accounts, the only evidence of which was their book of original entries. They also held a note for $265, upon which they claimed : *Held,* that the auditor was right in allowing the payment of A., C., B. & Co. of the amount mentioned in the assignment.

2. Where an assignment was made for the benefit of creditors, and the landlord of the assignor gave notice to the assignee of the amount of rent due, before the sale or removal of the goods, and told him that he wished to have it secured for him, which the assignee promised to do, as far as the law allowed, it was *held,* that the assignee was justified in paying the amount of rent to the landlord.

THIS was an appeal from a decree of the Court of Common Pleas of Bucks County, made upon exceptions to the report of an auditor appointed to distribute certain funds in the hands of Thomas Sands, assignee of William W. Osborne.

The part of the assignment upon which the question before the Court below arose, was as follows :

" After deducting the reasonable costs and charges of the said Thomas Sands, and expenses incident to this trust, shall and will pay and discharge and indemnify Thomas Sands, of Solebury, in order, first, by the payment of a certain note of two hundred dollars, due and owing by the said William W. Osborne; in the second place, shall and will pay and discharge, secure and indemnify, Isaac Vanhorn a note of one hundred and fifty dollars, due and owing by the said William W. Osborne ; and in the third place, shall pay and discharge two hundred and twenty-five dollars, due and owing to A. C. Brittain & Co., by the said William W. Osborne; and in the fourth place, shall pay and discharge Sam-

uel Sutton, by the payment of all the notes to the Doylestown Bank of Bucks County, remaining unpaid, upon which the said Samuel Sutton is endorser, drawn in the name of J. & W. Osborne, a schedule whereof is hereunto attached; and also shall and will pay and discharge, secure and indemnify the said Samuel Sutton, by the payment of all notes to the New Hope Delaware Bridge Company, remaining unpaid, upon which the said Samuel Sutton is endorser, drawn in the name of J. & W. Osborne; a schedule whereof is attached."

The auditor reported that payments ought to be made as follows:

" Thomas Sands's note, with interest                      $202 16
    Isaac Vanhorn's note, balance due                       21 87
    A. C. Brittain & Co., as preferred in assignment       225 00
    Samuel Sutton, notes in Doylestown Bank                300 00
        do.      New Hope & Delaware Bridge Co.            425 00

    Amount preferred                    $1174 03
    Balance in assignee's hands           774 31
    Deficiency in paying the            ————————
        preferred creditors              400 72"

To this report Samuel Sutton, one of the said preferred creditors, filed the following exception:

" 1. That the auditor erred in allowing and reporting to A. C. Brittain & Co. two hundred and twenty-five dollars."

Daniel Parry, one of the general creditors, also excepted to the auditor's report, as follows:

" 1. That the auditor erred in not allowing the landlord's claim for one year's rent, due previous to the removal of the goods of the assignor, which were subject to the landlord's distress.

2. That the auditor erred in not allowing the assignee's account for rent due said landlord, to the amount of seventy-five dollars; which claim was assented to previous to the removal of the goods."

On the argument before Fox, (Pres't) the following depositions were read.

Thomas Sands, the assignee, testified as follows:—" Osborne lived in the house of Parry at the time I accepted the trust. After I had appraised the goods of Osborne, and before the sale and removal, Parry came to me and said he had seventy-five dollars, which he wanted paid, and wanted me to receive it for him. I told him, so far as the law allowed, I would receive it: he appeared satisfied, and allowed me to sell the goods. I laid the claim of Parry before the auditor, and told him I expected it would be paid.

(Osborne's Estate.)

Parry made no interference to stop the sale or removal of the goods. I think I accepted the trust in April, 1837. I think the property rented for seventy-five dollars: I believe Parry told me so. Parry did not ask me to pay the rent, while the goods were on the premises, and before the sale. I don't know that he distrained. All the request that he made was, that he wished me to secure it for him. I told him at our first conversation, that I considered his claim valid."

The auditor, A. M. Griffith, Esq., was also examined, and testified as follows:—" Samuel Brittain, one of the firm of A. C. Brittain & Co. produced before me the claim of the firm. It was a transcript from their book of original entries. I think a part of it for cash lent, and a part for other matters charged to the assignor. There was no other evidence of indebtedness produced at that time. The greater part of the claim produced, was for cash entries taken from their book, as I think. Brittain at this time, the first meeting, founded their claim to preferment under the assignment on the cash entries in their book, as he supposed the assignor intended to prefer them for the cash entries. I reported in their favour upon the evidence of the cash entries. At the first meeting Brittain mentioned a note they held against the assignor for a larger amount than the sum for which they were preferred in the assignment. The adjournment to the second day was because all the preferred creditors requested it, to give them an opportunity to present their further evidences of claim. The claim of Brittains for the cash entries was objected to before me by Sutton's counsel. At the second meeting Brittain produced a note dated March 28th, 1835, payable ten days after date, to A. C. Brittain & Co., for two hundred and sixty-five dollars and fifteen cents, and signed by the drawer, William W. Osborne. The note was proved. Brittains' counsel, at the second meeting, said they claimed under the assignment. This was in answer to the question of Sutton's counsel, as to whether they claimed upon the cash entries in the book, or upon their note. The book-account was not laid before me at the second meeting. The note was produced to substantiate the preferment of Brittains. The transcript produced by Brittain exceeded the amount of their preferment in the assignment. The claim at the second meeting was not founded exclusively upon the note. I would have reported upon the evidence of the cash account, even if the note had never been produced. The evidence of the note strengthened and corroborated the evidence of the claim Brittains had in the assignment, although there was evidence sufficient to induce me to report without it. There were but two meetings of the creditors before me."

After argument, the Court made a decree, that the rule granted upon the exceptions filed by Sutton, be discharged:

And in the case of Parry's exceptions, the report of the auditor was ordered to be altered in conformity with the exceptions.

Whereupon an appeal was taken by Samuel Sutton to this Court: and the following errors assigned :

" 1. That the Court below erred in discharging the rule granted upon the exceptions filed by said Sutton against the auditor's report, allowing the claim of A. C. Brittain & Co., to the amount of two hundred and twenty-five dollars.

2. That the Court below erred in decreeing that the auditor's report be altered in conformity with the exceptions filed by Daniel Parry."

Mr. *Brooke,* for the appellant.—Messrs. Brittain & Co. held several claims against the assignor, who intended to prefer them for the amount of *cash lent* only. The phraseology of the assignment in regard to this claim is peculiar. The claims of all the other preferred creditors are declared to be founded upon *notes ;* and the omission of this declaration in the present instance affords the presumption that the claim of Brittain & Co., which was intended to be preferred, rested on other grounds. It was so understood by Brittain & Co. themselves, as appears by the testimony of the auditor—" at the first meeting they founded their claim to preferment on the cash entries in their book, as they supposed the assignor intended to prefer them for the cash entries." At the second meeting the book-account was not laid before the auditor, but a different ground was then assumed, and a *note* for two hundred and sixty-five dollars and fifteen cents was produced and proved to substantiate the preferment. The intention of the assignor must be observed ; and Brittain & Co. having failed to establish, by competent testimony, their claim for cash lent, the preference fails. The admission of the debt in the assignment is not sufficient—there must be other evidence of its existence. The contrary doctrine would facilitate the commission of frauds, and produce the most pernicious results ; and this Court have therefore held the law to be as stated. *Account of Stephenson's Assignees,* (7 *Watts,* 480.) The consideration of the note produced was not *cash lent,* and consequently it was not evidence to support the claim preferred. Nor was the book of original entries evidence for that purpose. *Ducoign* v. *Schreppel,* (1 *Yeates,* 347.) The Court therefore erred in allowing this claim. The remedy of Sands, the landlord, was by distress, and he was bound to pursue it. His preference over the general creditors arises from his right to distrain the goods assigned ; and having omitted to exercise this right, and suffered a *bona fide* sale and removal by the assignee, he stands in the same position with respect to the proceeds of sale as any other creditor. The goods were liable for the rent in arrear, while they remained on the premises ;

but after their removal, the landlord had no specific lien for his rent on the goods, or preferred claim on the avails of them in the hands of the assignee. *Morris* v. *Parker et al. Assignees of Haines & Pine*, (1 *Ashmead*, 187.) The authority of the assignee is wholly derived from the deed of trust, and that did not authorise the agreement by the assignee to pay the rent. His promise may have rendered him liable personally—the loss of the landlord's lien on the goods assigned would constitute a sufficient consideration for that purpose : but the promise was not valid in his capacity of assignee.

Mr. *Gerhard*, for the appellees.—The claim of A. C. Brittain & Co. admits of no question. They were preferred " two hundred and twenty-five dollars due and owing to A. C. Brittain & Co., by the said William W. Osborne." Is there evidence that two hundred and twenty-five dollars was so due and owing ? The assignment is itself *prima facie* evidence of it ; it is an admission against the interest of the assignor at the time he made it ; besides, the note of Osborne to A. C. Brittain & Co. for a large amount, produced before the auditor, removes every objection. The claim of Parry for rent stands upon a different ground, and will give room for argument, but is not susceptible of any serious objection. The rent was in arrear, and could have been distrained for ; the goods of the assignor in the hands of the assignee being liable therefor, until removal. There was an equitable appropriation of the assets in his hands by the assignee (Sands) to the payment of this rent, which is favoured by the law. Though their rent is so readily recoverable, lessors are protected in a number of ways. An under-tenant may, without waiting for a distress, pay a paramount rent. *Comyn L. & T.* 401. 529. Rent is preferred in the distribution of the assets of a decedent and of an insolvent's estate, when administered by trustees appointed under the act of assembly. If the assignee had paid the rent, he would clearly be entitled to a credit for its whole amount. Even in the case of a legal bankruptcy this would be so. *Stevenson* v. *Wood*, (5 *Espinasse*, 200.) In *Bradyll* v. *Ball*, (1 *Bro. Ch. Rep.* 427,) an *equitable* lien for rent is recognised. The claim must be allowed to prevent a fraud ; and so the Court below properly said. It is the case of a distress avoided by the inducement to waive it held out by the assignee. But there is a valid and binding interest between Sands as assignee and Parry, that Sands should pay him (Parry) out of the assets, if he had a valid claim to the rent, and should not distrain for it. It was an honest agreement, and beneficial to the creditors of Osborn. Their exception to it is ungracious. The consideration is contingent in form, but absolute in fact ; and the contract is valid. *Gray* v. *Bell*, (4 *Watts*, 410.) In *Morris* v. *Parker*, (*Ashmead*, 187,) the plaintiff had no right of distress, no rent being in arrear. The decision of that case was therefore

correct; and even if considered as an authority, does not affect the present question.

The opinion of the Court was delivered by

Gibson, C. J.—A promise to secure a landlord, in consideration that he would waive his right to distrain, and suffer the goods to be removed, is forbidden by no rule of law or policy. As legal owner of the goods, the assignee is capable of contracting in respect to them: and the landlord has a lien on them, for unpaid rent, which might seriously interfere with the execution of the trust. What, then, would be gained by driving him to a rigid application of his remedy? A part of the property, if not the whole, would be seized and sacrificed by a forced sale. Surely the power of a trustee to pay rent out of a fund liable to distress, or to contract for the payment of it, is as undoubted, as would be his power to apply a part of it for the redemption of the rest, if it were in pawn, which, as the object of the trust would otherwise be frustrated, is a power inherent in the office. In *Morris* v. *Parker*, there was no right to distrain when the goods were removed, and consequently no agreement to give the landlord recourse to the avails, as an equivalent for it; but in *Stevenson* v. *Wood*, the principle of the present case was settled, in circumstances nearly similar. In that case, the rent had been actually paid in avoidance of a distress, and here it was only agreed to be paid; but the landlord ought not to be placed in a worse predicament for having thrown fewer impediments in the way. The trust was benefitted by his forbearance; and if the trustee would have been entitled to an allowance for actual payment, *a fortiori*, he should be allowed to perform his promise to pay, made, as it was, on a lawful and valuable consideration.

The difficulty in regard to the remaining point is raised by our own decision in the case of *Stevenson's Assignees*, which has been pressed upon us as ruling the present. In that case, however, the omission to produce the voucher named in the assignment, was a circumstance of suspicion which ought to have put the assignees on their guard; and one which has no existence here. The assignees were charged on the ground of negligence, and not on the principle that there must be other evidence of the debt than an admission of it in the instrument. A trustee is answerable only for supine negligence; and he is not bound to suspect the existence of collusion, merely because he is directed to pay a debt for which there may have originally been no voucher. In the commercial world, where calls for accommodation are sudden and for short periods, and even betwixt friends not in trade, nothing is more usual than to lend without a memorandum of the transaction; and the want of it is entirely consistent with fair dealing, the convenience of

(Osborne's Estate.)

the parties frequently inducing them to repose an extraordinary degree of confidence in each other. Of collusion, in a case like the present, there is no presumption without proof; consequently there is no pretext for charging a trustee who pays on the foot of the debtor's concession, where there is no intimation of the existence of a voucher whose absence can be accounted for only on a presumption of its suppression, or any extrinsic circumstance to lead to a suspicion that the debt did not exist. In *Stevenson's case*, the existence of the bills was affirmed by the assignment; in this, it is not said that there ever was a voucher for the debt in question; and the want of one is consistent with the deed. In that case, the contest was with the assignees; in this, it is between creditors; but the principle I have indicated, must lead to the same result as if the assignee were the party; for I am far from thinking that the evidence would not warrant a recovery against him. The admission of a debtor in regard to the liability of a fund, of which he had at the time the ownership and control, is necessarily an admission to his disadvantage; unless, in derogation of the common law maxim, we assume without proof the very fact in contest—the existence of collusion to cover the property by the device of a debt. We therefore think the claim was properly allowed.

Decree affirmed.