## Vandever's Appeal.

In matters of discretion, in contradistinction to ministerial acts, co-trustees cannot act separately in discharging their trust; their receipts and their signing certificates of bankruptcy must be joint.

A case of urgent necessity might be an exception to the rule; but if the other trustee might be consulted, such necessity does not exist.

Nor does it exist where the acting trustee might have secured an equal benefit to the estate by due vigilance, which he omits to exercise.

THIS was an appeal from the decree of the Common Pleas of *Chester* county, awarding to the estate of Elisha Phipps $500 for one year's rent, out of the balance in the hands of Alexander Mode and Ellis Phipps, assignees of William Steadman, deceased, on a settlement of the account of their trust, by Thomas Vandever, one of the preferred creditors under the assignment. It appeared that Steadman, on the 28th March 1843, being in the personal occupancy of certain premises demised to him by Elisha Phipps at a yearly rent of $500, assigned all his goods and chattels to Mode and Ellis Phipps, in trust for the benefit of creditors. The property assigned remained on the premises till the 1st May following, when part of it was exposed to public sale and sold by the assignees. On the 20th April of the same year, Elisha Phipps requested his son Joseph (a witness for the appellees, and objected to by the appellants on the ground of interest,) to take out a landlord's warrant for him, and levy on the goods in the hands of the assignees for a year's rent, which had been due since the 1st of the month. While the father was giving these directions, Ellis Phipps, another son and one of the assignees, came in, and learning his father's intentions, requested him not to distrain, and promised that as soon as he could make sale of the property and collect the money, he would pay him the one year's rent. Mode, the other assignee, was not present on this occasion. Joseph did not take out any warrant or make any distress. Elisha died in June 1843, leaving a will, of which he appointed his son Ellis executor, and one of the residuary legatees.

[Vandever's Appeal.]

There were three classes of preferred creditors under the assignment. Elisha Phipps was not one of them. The assignees settled an account of their trust, showing a balance in their hands, which was insufficient for the payment of all the preferred creditors. The court below decreed to the estate of Elisha Phipps out of the balance, $500 for one year's rent. From this decree Vandever, one of the preferred creditors, appealed.

The following opinion was delivered by BELL, President:

The first question made under this state of facts is whether the promise made to Elisha Phipps by Ellis alone, he being but one of two parties, is binding on the fund. That such a promise, made by all the assignees upon the consideration stated, is so binding, and will entitle the landlord to a preference of payment over the other creditors of the assignor, is fully established by *Stevenson* v. *Wood*, (5 *Esp.* 200); *Osborne's Estate*, (5 *Whart.* 267). But it is said that, unlike the case of executors and administrators, where there are several trustees all have equal power, interest and authority, which is in its nature joint, and all must join in the execution of the trust, and so one cannot sell without the other, or desire to receive more of the creditor's money, or to be more of a trustee than his partner; it is indeed regularly true that when the execution of a private power or trust is committed to more than one, all must join in the acts necessary to carry the trust or power into execution, *Beltzhoover* v. *Darragh*, (16 *Serg. & Rawle* 337); and the act of less than the whole number is invalid at law. But the act of the assignee in this instance was not so much in furtherance of the trust as to prevent its utter frustration by a sacrifice of the property, the subject of the trust. The exercise of such a power, I take it, is inherent in each of the trustees from necessity, and being for the advantage of the *cestui que trust*, the assent of the co-trustee would if necessary be presumed, in order to sustain a procedure essential to the continued existence of the trust, at least in the absence of an express negative; on the ground that it is the duty of each of the trustees to do everything proper and necessary to the promotion of the interest of the *cestuis que trust;* and equity, in the absence of proof to the contrary, will take it for granted he has so done.

If instead of a promise to pay there had been a payment of the rent by one of the assignees in avoidance of the distress, it is scarcely to be questioned he would have been entitled to a credit in his account for the amount thus paid, and yet there is no difference in principle between the payment and the promise as shown by *Osborne's Estate* already cited. But again: it is a rule in equity that what is compellable by suit is equally valid if done by the trustees without suit. *Lewin on Trusts* 413. Here payment of the rent out of the fund assigned might have been enforced by the landlord without the assent of the trustees. Surely then the agree-

ment of one of them to do what in truth could not be refused, by which the costs and sacrifice of a forced sale were avoided, is effective as against those whose interests were thus subserved.

The creditors too have had the benefit of the consideration upon which the promise of their trustee was based, and it is ungracious in them now to attempt its defeat upon a mere technical objection. This would be in fact to perpetuate a fraud on the estate of Elisha Phipps by those who have been benefited by an arrangement by which alone he was induced to forego his hold on the goods assigned; and to this, I think, equity could never be induced to lend itself. The arrangement between Ellis and his father was then binding upon the funds in the hands of the assignees at the time it was made.

But it is urged that its efficacy is destroyed by Ellis's subsequently becoming executor of the will and one of the residuary legatees of the estate of his father. In support of this position the argument is that a man cannot take advantage of his own promise, to put money in his own pocket, as it is said is the attempt here. But it must be remembered that Ellis is here in two capacities as distinct and separate as if they were represented by two different men. In both he acts in a mere representative character, bound to take care of both the trusts which are confided to him, but without possessing any quality destructive of the right of either. If another than he had become executor, there would have been no shadow of reason for saying that a claim perfectly good in the hands of Elisha in his lifetime was destroyed by his death; and I am at a loss to comprehend how the fact of the representative of the debtor estate becoming as here the representative of the creditor estate, can make such a result.

Even admitting the assignees to be beneficially interested as legatees in the fund to be recovered from the hands of the assignees, it cannot operate to destroy the virtue of an arrangement made upon a valuable consideration between parties competent to make it, and which being in fact executed, it would be iniquitous to rescind. I am aware of the rule that generally a trustee shall not be permitted to derive a benefit to himself by an act of his own on a subject connected with the trust, during the subsistence of the trust. This rule would perhaps have been applicable had Ellis been the owner of the rent at the time of his promise; though even this is doubtful. But he was not such owner, nor had he in fact or in law any connection with the claim, through which he might enjoy a benefit flowing from his arrangement. That he subsequently became beneficially interested in the promise without any act of his own surely cannot have the effect by retroaction to destroy that which before was binding and operative. The law allows a trustee to purchase at his own sale; but suppose in this instance Elisha had become the purchaser of the chattels assigned for a less price than their value and then died, when the goods

passed to Ellis as residuary legatee, would the sale be invalid as against the creditors in the absence of actual fraud? Surely not. Many other similar illustrations might be put, but this may suffice. As then there is no suggestion of collusion or fraudulent pretences between the father and son, there is nothing in morals to forbid Ellis, as executor, or even as legatee, asking that the contract shall be wholly completed; and I see nothing in law which prohibits it. It is not analagous to the case, to which at the bar it has been likened, of the deposition of a witness, who, before it is used, becomes interested, and which courts of law under a rule of evidence founded in supposed policy, exclude, though Chancery constantly hears such depositions. This is a question of abstract justice that must be settled according to the more enlarged and comprehensive principles which govern rights and remedies.

But it is said that here the legal remedy is gone; that no action can be maintained to enforce this agreement, because no action at law could in the present position of the parties be brought to enforce this contract; but the consequence by no means follows. Where a creditor makes his debtor his executor, the legal remedy for the recovery of the debt is gone, and therefore at law the debt itself is said to be extinguished; but in equity it is held to be no more than a parting with the action; the duty still remains, and the executor must bring the debt into his account in favour of creditors, legatees, and even next of kin. *Pusey* v. *Clemson*, (9 *Serg. & Rawle* 208). So here, though the legal action be parted with, the obligation resting upon the assignees as representatives of the trust fund, to pay the rent, still remains and may be rendered available through the medium of a decree of distribution.

This case was argued at December Term 1844, and now re-argued by

*Darlington*, for the appellant, who contended that one of two trustees could not make a promise or contract to bind the trust fund. *Lewin on Trusts* 265; *Willis on Trusts* 136; 2 *Moore* 583; *Ex parte Rigby*, (19 *Vez.* 463); *Beltzhoover* v. *Darragh*, (16 *Serg. & Rawle* 337). They form one collective trustee, and are bound to join in all acts connected with the trust. The act of the assignee here, moreover, was in defeat of the trust.

*J. Lewis*, contra. If the contract had been made by both the assignees, it would have bound the fund. *Osborne's Estate*, (5 *Whart.* 267). This was a case of necessity to prevent a sacrifice of the trust property. Forbearance is a sufficient consideration, and the forbearance here was for the benefit of the trust and for the protection of the fund. This was sufficient to authorize the assignee to make the promise in question. *Unangst* v. *Shortz*, (5 *Whart.* 506). Chancery would have compelled trustees to make this contract.

The opinion of the Court was delivered by

ROGERS, J. — When the administration of a trust is vested in co-trustees, they all form but one collective trustee. They must, therefore, execute the duties of the office in their joint capacity. Thus a receipt for money or a certificate of bankruptcy, &c. must receive the joint signature of the whole body; for the power, interest and authority of co-trustees in the subject-matter of the trust being equal and undivided, they cannot like executors act separately, but all must join. *Lewin on Trusts* 265, (24 *Law Lib.*); *Willis on Trusts* 136, (10 *Law Lib.*); *Ex parte Rigby*, (19 *Vez.* 463). And this principle enters into all cases depending on the discretion and judgment of the trustees in contradistinction to acts of a mere ministerial nature. The former requires the concurrence of all the trustees; the latter may be performed by one. The contract in question is without doubt one of the former description, and consequently comes within the general principle. And the only doubt is whether there are circumstances in the case which make it an exception. It may be admitted on the authority of *Osborne's Case*, (5 *Whart.* 267), that if the contract had been made by both the assignees, it would have bound the fund; but the question is whether one of the trustees without any authority from his co-trustee, can bind the estate. And that this cannot be appears from the principles above stated, unless there are some circumstances attending the case which make it an exception from the general rule. The validity of the contract is put on the ground of necessity and the benefit which the fund derived from the agreement. It is said that the act of the assignee in this instance was not so much in furtherance of the trust as to prevent its utter frustration by a sacrifice of the property. The exercise of such a power is inherent in each of the trustees from necessity, and being for the advantage of the *cestui que trust*, the assent of the co-trustee would, if necessary, be presumed, in order to sustain a procedure essential to the continued existence of the trust, at least in the absence of an express negative, on the ground that it is the duty of each of the trustees to do everything proper and necessary to the promotion of the interest of the *cestui que trust*, and equity in the absence of proof to the contrary will take it for granted he has so done.

It is not my intention to deny the justice of the abstract principles asserted by the court, but it seems to me they do not apply, because there is no room for the presumption of any acquiescence or consent to the contract; for the proof is that the co-trustee was not present when the agreement was made, nor has any consent, either previous or subsequent, been shown, nor is any pretended to have existed. It is the naked case of one of two trustees making an important contract without any authority whatever from the other to act for him. Nor do we perceive any necessity whatever for the agreement. The co-trustee was in the immediate vicinity

VIII. — 52          2 K

and could have been consulted without any detriment whatever to the interests of the trust. It is therefore unlike the case to which it has been assimilated in the argument, of a fire where one of two trustees makes a contract in the absence of his co-trustee, to preserve property of the trust from destruction. The urgent necessity of the case would constitute an exception to the general rule, and on that account alone the contract would bind the estate. The argument also assumes the contract to be for the advantage of the estate. Now whether this be so it is impossible to say, as that may depend on a variety of considerations. But the conclusive answer to this suggestion is, that it is a matter in the first instance solely for the discretion and judgment of all the trustees. It is a question which one alone cannot decide. To say that the validity of the contract depends on its being afterwards deemed advantageous to the trust would in fact abrogate the rule, and would lead to perplexing inquiries and to questions which in many cases it would be difficult to settle. It is a rule in equity, as is said, that what is compellable by suit is equally valid if done by the trustees without suit. And this is true; but to give force and application to the suggestion it must be shown that a Court of Equity would compel the trustee to enter into this contract. But as no Court of Equity would interfere in such a case, the application of this principle is not very obvious. It is urged that if instead of a promise to pay there had been a payment of the rent by one of the assignees in avoidance of the distress, it would scarcely be questioned he would be entitled to a credit for the amount thus paid. Without expressing any positive opinion on this point, I would barely observe that it seems to me to be stating the same question in a different form, and that it would be more prudent at least to refrain from doing so without the assent of the other trustees. It is strongly urged that the creditors have the benefit of the consideration on which the promise of the trustee was based, and that it is ungracious in them now to dispute it. This argument addresses itself rather to the generosity of the creditors than any legal right arising from the contract; but the latter is the question now under consideration. Besides, it assumes a matter admitting of some doubt, and which the trustees must determine for themselves, viz., whether the contract may not have been a detriment rather than a benefit to the fund. Hardship cannot with truth be alleged; for the contracting parties were aware, or at least ought to have been, of the rule which prevents one of two or more trustees from making a contract binding the fund. If any loss arises from a violation of this well-settled rule, it is but right that they alone should abide the consequences. Whether the contracting party is personally liable is not the matter in dispute, but its obligatory force on the fund in the hands of the trustees. We think it better to adhere to the rule which requires the assent of both, and that this case presents a strong illustration of the pro-

[Vandever's Appeal.]

priety of this course. It was clearly the duty of the trustees to manage the trust for the best interests of the creditors; and had the property been removed immediately on the assignment, the landlord would have had no lien whatever. But instead of pursuing this obvious course, they permit the goods to remain on the premises until the rent becomes due and the right of distress attaches, and then one of them, the son of the landlord, without any consultation with his colleague, undertakes to make the contract in question.

This view of the case makes it unnecessary to consider the objection to the competency of Joseph Phipps.

The decree of the court ordering $500, one year's rent, to be paid to the estate of Elisha Phipps is reversed.

Decree reversed.