## P. FESMIRE ET AL. v. J. SHANNON ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 6, 1891—Decided October 5, 1891.
[To be reported.]

1. It has always been the law that the act of any one of several co-executors, in disposing of the personal assets of their testator, is the act of all and binds all, and that one of them may release a debt which has been paid to him in good faith by a debtor of the testator, with binding efficacy as to the whole.

2. There is a distinction, in this respect, between executors and technical trustees. The latter must execute the duties of their office in their joint capacity; and a payment of a part of the trust fund to one of them, without the knowledge or consent of the others, will not be a good payment, and a release by one alone will not discharge the debt.

(a) Three executors, who were directed by the will of their testator to invest a part of the estate for the benefit of his widow, during her life, settled their account wherein they set apart a certain sum for investment. A few days afterward, they purchased, with a part of said money, a mortgage previously given by the defendant to a third person.

(b) The mortgage was assigned to the three executors as such, without mention of any trust. The original mortgage was left by two of the executors in the custody of the third, in order that the latter might collect and pay over to the widow the interest accruing thereon. After doing so for some years, he collected the principal, satisfied the mortgage of record, and embezzled the money:

Statement of Facts.

3. The executors were not technical trustees, under the will; and their right to collect the mortgage, as between them and the mortgagor, was a function of their power as executors. Nor was there anything to put the mortgagor upon notice that they held the mortgage as trustees for the widow. Wherefore, the payment and satisfaction discharged the mortgage.

4. There is no distinction, as to the rights and powers of executors, arising out of the fact that property they hold was acquired by them after the testator's death; nor, as to the power of one executor to receive payment, are investments made by them, as executors, subject to a different rule from that applicable to securities received from their testator.

Before PAXSON, C..J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 97 January Term 1891, Sup. Ct.; court below, No. 44 June Term 1886, C. P.

On April 6, 1886, Peter Fesmire, Ephraim Magargal and Josiah Kerper, executors of the will of Peter Fesmire, deceased, as assignees of Benjamin Brown, administrator, etc., brought scire facias against James Shannon, with notice to William Hazel Wilson, terre-tenant, upon a mortgage executed by the defendant Shannon in favor of Samuel Brown. Before trial, Josiah Kerper was dismissed by the Orphans' Court of Montgomery county from the office of executor, and, by amendment made at the trial, his name was stricken from the record as one of the plaintiffs.

At the trial, on October 13, 1890, the following facts were shown:

On April 1, 1871, James Shannon executed and delivered to Samuel Brown a mortgage of certain real estate in Norristown, to secure the payment of $2,500, with interest. The mortgagee having died, Benjamin Brown, his administrator, on June 19, 1875, transferred the mortgage by the following assignment indorsed thereon:

"I, Benjamin Brown, administrator of Samuel Brown, the mortgagee within named, do hereby assign, transfer and set over the within mortgage and all moneys due and to become due thereon, unto Josiah Kerper, Peter Fesmire and Ephraim Magargal, executors of the last will and testament of Peter Fesmire, deceased, to hold the same to them, together with

the mortgaged premises within described, their heirs, executors, administrators and assigns."

By the will of Peter Fesmire, deceased, his executors, named in the foregoing assignment, were directed to invest the one third of his estate in "good real-estate securities," the interest or income of which was to be paid half yearly to the testator's widow during her life, the principal to be distributable at her death among certain of his children, among whom were Peter Fesmire, one of the executors, and Catharine Magargal, the wife of another. The purchase by said executors of the mortgage in question was made as an investment, in pursuance of the aforesaid direction in the will. At the date of the assignment to them they had settled their final account, in which they set aside $7,306.12 for investment for the widow's benefit. The date of filing that account was given in the paper-books as June 10, 1875. As Josiah Kerper resided near to the widow, while his co-executors resided some distance away, the latter left in his custody the original mortgage and assignment, in order that he might from time to time collect and pay over to the widow the interest accruing upon the mortgage. He did so collect and pay over the interest until 1882, and continued to make payments of interest to the widow until October 1, 1885.

On April 1, 1882, Shannon paid the principal of the mortgage debt to Kerper, who thereupon delivered up to him the original mortgage, and entered upon the record thereof in the recorder's office an acknowledgment of satisfaction under seal in the following form:

"I, Josiah Kerper, assignee of Benjamin Brown, administrator of Samuel Brown, Sr., mortgagee named in the annexed mortgage, do hereby acknowledge full satisfaction for principal and interest of said mortgage, and do release the mortgaged premises to the mortgagor, his heirs and assigns forever. Witness my hand and seal this first day of April, 1882. JOSIAH KERPER, Acting Executor. Acknowledged before me, H. B. STRODOCK, acting for Recorder."

Kerper's co-executors were not aware of this payment until some time in 1886. On cross-examination, they both testified that they had not given notice to Shannon that he must not pay the principal to Kerper, or that the mortgage was held by

Charge of Court below.

them as testamentary trustees. The money so collected by Kerper from Shannon was embezzled.*

At the close of the testimony, the court, SWARTZ, P. J., charged the jury in part as follows:

This is a suit upon a mortgage, and as the court views this case there is no question of fact that requires your consideration. [The only question raised by this issue is one of law, and therefore it seems plain to the court that the duty of the court is to direct you to render a verdict in favor of the plaintiffs and against the defendants.] ³ It is perhaps unnecessary to give my reasons to you for this conviction. . . . .

There is no evidence here that Mr. Shannon had any knowledge of any trust devolving upon these executors, other than that which devolved upon them as executors. Nor is there any proof here that Mr. Shannon had notice that this money was invested by the executors, the interest whereof was to be paid to the widow of Peter Fesmire. [The facts as disclosed, in this case, show simply the investment by three executors of the funds of the estate, and the payment by the owner of the property, the mortgagor, to one of the executors, who failed to account to the estate or to his co-executors for the money so received; and, in the view the court takes of this case, that is not a good payment of the mortgage],³ and the satisfaction entered by one of the executors under such circumstances is not a good satisfaction.

The executors are appointed to act together. The purpose of the appointment of three executors, no doubt is for the better protection of the estate; and when this obligation was taken in the name of the three executors, it was right and proper that each one should be consulted, or at least assent to the payment of this money to any particular one of the executors, for otherwise the matter would be entirely in the hands of one executor, and it would be useless to have the appointment of three. If one executor can undo everything that three can do or may do, it is useless to require that the three should act conjointly in the investment. . . . .

---

* By a proceeding in the Orphans' Court, upon the petition of the widow, it was sought to hold the co-executors responsible for this money: Held, they were not liable: Fesmire's Est., 134 Pa. 67.

Arguments.

[It is your duty, therefore, under the instructions of the court, to render a verdict in favor of the plaintiffs, for the amount of this mortgage together with interest at six per cent from the time the last interest was paid, and that is admitted to be from the first day of October, 1885,] [3] or at least there is no testimony to the contrary.

—The jury, in accordance with the direction of the court, returned a verdict for the plaintiffs for $3,255.46. Judgment having been entered thereon, the defendants took this appeal, assigning for error:

3. The parts of the charge embraced in [ ] [3]

*Mr. C. H. Stinson* and *Mr. B. E. Chain,* for the appellants:

1. It has never been held that one of a number of executors has not the power to collect a debt or obligation due to the testator in his lifetime: 3 Wms. on Ex'rs, ch. 2. The law does not cast upon a purchaser from one executor the duty of inquiring whether he is mismanaging the estate in fraud of creditors or legatees: Wood's App., 92 Pa. 379. Much less will such a duty be cast upon a debtor who pays a debt due to the estate. It would seem, therefore, that if this mortgage had been held by the testator at his death, the payment to Kerper would have been valid. Can the fact that it was taken by the executors as an investment of assets of the estate, make any difference?

2. Such a distinction is nowhere to be found in the books, and its unsoundness is fully demonstrated by THAYER, P. J., in D'Invilliers v. Abbott, 4 W. N. 124. The assignment, in this instance, indicates no more than that the executors purchased the mortgage to keep the assets of the estate invested until final settlement, which is a very common transaction. They are not named in it as trustees, and the mortgagor was not advised that the investment was held for any trust, under the will or otherwise. See Bowes v. Seeger, 8 W. & S. 222. Moreover, two of the executors trusted Kerper, and held him forth as their agent by giving him possession of the mortgage. What justice is there in the attempt to throw the consequences of their negligence upon innocent parties who acted in perfect good faith?

*Mr. W. Horace Hepburn*, for the appellees:

1. By filing their account and setting aside $7,306.12 for investment under the directions of the will, for the benefit of the widow, the executors divested themselves of their character as such, as to this money, and assumed that of trustees: Fesmire's Est., 134 Pa. 84; Hill on Trustees, § 364; Aston's Est., 5 Wh. 241. This being so, Josiah Kerper had no power to receive the principal of the mortgage, and release or in any manner discharge the same, without the concurrence of his co-trustees; 1 Lewin on Trusts, *258; Vandever's App., 8 W. & S. 405; Bohlen's Est., 75 Pa. 304; De Haven v. Williams, 80 Pa. 480; Hall v. Franck, 11 Beav. 419; Cottam v. Railway Co., 1 Johns. & Hem. 243; Bullitt v. Abinger, 6 Jur. 412, Walker v. Symonds, 3 Sw. 63; Lee v. Sankey, L. R. 15 Eq. 204.

2. It is claimed that the mortgagor had no notice of this trust. But he had notice from the assignment that the mortgage was transferred to Kerper and others, as executors of the will of Peter Fesmire, deceased; that it formed no part of the decedent's estate in his lifetime; and that it was made payable, by the terms of the assignment, to the executors, "their heirs, executors, administrators and assigns," not to their successors, which earmarked it as an investment by them as trustees. He knew that it was no part of the duty of the executors, as such, to make the investment, and that they had held it for nearly seven years. By the assignment, referring to the decedent's will, he had constructive notice of the trust which that will disclosed: McAteer v. McMullen, 2 Pa. 33; Bohlen's Est., 75 Pa. 313. Having notice of all these things, he was put on inquiry as to Kerper's authority to receive the principal: Hottenstein v. Lerch, 104 Pa. 459; Pepper's App., 77 Pa. 373.

3. It is absolutely necessary for the preservation of trust-estates, that the law should require the joinder of all the executors in a receipt or release, in the case of such an investment as this, made in their joint names in their fiduciary capacity. The plaintiffs had a right to recover, regardless of the mortgagor's knowledge of the specific trust for which the mortgage was taken, for the investment was in their joint names, and therefore the joint receipt of all was required to discharge it: De Haven v. Williams, 80 Pa. 480; Shipbrook v. Hinchinbrook, 16 Ves. 477; Ducommun's App., 17 Pa. 268. All the cases

cited by appellants, except D'Invilliers v. Abbott, 4 W. N. 124, and Bowes v. Seeger, 8 W. & S. 222, are cases in which it was held that any one executor had full power over assets standing in the name of the decedent, a proposition which we do not dispute. And the distinction between assets standing in the testator's name, and investments in the joint names of all the executors, was entirely overlooked by the court in D'Invilliers v. Abbott, supra, and none of the cases therein cited go as far as that case.

OPINION, MR. JUSTICE GREEN :

This was a scire facias on a mortgage given by the defendant Shannon to one Samuel Brown on April 1, 1871, to secure the payment of $2,500. Brown having died, his administrator, on June 19, 1875, assigned and transferred the mortgage to Josiah Kerper, Peter Fesmire and Ephraim Magargal, executors, etc., of Peter Fesmire, deceased. For reasons satisfactory to themselves, the custody and possession of the mortgage papers was entrusted to Kerper, one of the executors, who collected the interest as it fell due, until April 1, 1882, at which time the mortgagor paid the principal of the mortgage to Kerper, who thereupon, in his capacity as executor, entered satisfaction of the mortgage on the record and delivered up the mortgage papers to Shannon. In 1886, four years after the payment and satisfaction of the mortgage, the present writ of scire facias on the mortgage was issued by the executors of Peter Fesmire, in order to compel the mortgagor to pay the mortgage debt a second time. If the law is such that the debt may be recovered a second time from the mortgagor, of course he must submit and endure the great hardship cast upon him. But it will be the duty of a court of justice to see to it that the case comes clearly within the operation of some plain and imperative legal duty resting upon the defendant, before a result so harsh and oppressive shall be upheld and enforced.

It has always been the law, and is not at all disputed, that co-executors are regarded as an individual person ; that they possess full power and control over the personal assets of their testator ; that the act of any one of them in disposing of the assets is the act of all and binds all, and that one of them may release a debt which has been paid to him in good faith by a

debtor of the testator, with binding efficacy as to the whole. In Williams on Executors, part 3, ch. 2, it is said: "Co-executors, however numerous, are regarded in law as an individual person; and by consequence, the acts of any one of them, in respect of the administration of the effects, are deemed to be the acts of all, for they all have a joint and entire authority over the whole property. Hence, the release of a debt by one of several executors is valid and shall bind the rest." This court has fully recognized this doctrine in many instances; and in the case of Wood's App., 92 Pa. 379, it was correctly expressed by our late Brother TRUNKEY, thus: "An executor holds under a trust; he is the minister or dispenser of the goods of the dead. He has the same property in the personal effects as the deceased had when living. It is a general rule of law and equity, that an executor has an absolute power of disposal over the personal effects of his testator, and they cannot be followed by creditors nor legatees into the hands of the alienee. This results from the fact that in many instances the executor must sell, in order to perform his duty in paying debts, etc.; and no one would deal with him if liable afterwards to be called to an account. Co-executors are regarded in law as an individual person; and the acts of any one of them, in respect to the administration of the effects, are deemed to be the acts of all; as where one releases a debt, or settles an account of a person with the deceased, or surrenders a term, or sells the goods and chattels of the estate, his act binds the others."

As the mortgage debt in this case was paid to one of the executors of Peter Fesmire, who thereupon in his capacity of acting executor, released the debt and satisfied the record, the payment was prima facie a good payment and discharged the debt. But the appellees rely upon another principle, under which they contend that the debt was not discharged, and that is, that as to this particular debt the executors were trustees and not merely executors, and therefore a payment to one of them was not binding upon all, but must be made to all and the release must be executed by all. The doctrine as to trustees, and the distinction between their acts and those of executors, is well expressed by HARE, P. J., in an opinion adopted by this court in the case of De Haven v. Williams, 80 Pa. 480, thus: "It is well settled, in general, that the acts of one co-

executor bind the others, by reason of the confidence reposed
in them individually, in consequence of which each has full
power over the assets: Beltzhoover v. Darragh, 16 S. & R.
329. This is an exception to the rule that when a trust or au-
thority is delegated for mere private purposes, the concurrence
of all who are entrusted with the power is requisite to its due
execution: Sinclair v. Jackson, 8 Cow. 533, 583; and distin-
guishes executors from trustees, who are regarded by equity
as forming one collective trustee, and must therefore execute
the duties of the office in their joint capacity: Vandever's
App., 8 W. & S. 405, 409. Hence, a payment to one executor,
or a release from him, extinguishes the debt, although he mis-
applies the money and no part of it comes to the use of the
estate."

In Bohlen's Est., 75 Pa. 304, the present Chief Justice, in
an opinion while on the Common Pleas bench, which as to this
subject was adopted by this court, said: " It may therefore
safely be assumed that where stock stands upon the books of
a corporation in the name of a trustee, the said corporation is
bound to inquire as to the authority of the trustee to transfer
said stock, before they permit such transfer to be made. This
rule does not apply, however, to the case of executors and ad-
ministrators transferring stock standing in the name of a de-
cedent, for the reason that the law casts upon them the legal
ownership of the personal property of such decedent. It is
their duty to pay debts and make distribution amongst heirs
or legatees. To do so they must convert the personalty into
cash, and a transfer of stock, therefore, would be in due course
of administration. It would be unreasonable to hold that a
corporation, in such case, should be held to inquire whether,
in point of fact, the particular stock was needed for the pay-
ment of debts or legacies. . . . . A trustee stands upon a
different footing from an executor or administrator, in regard
to the transfer of stock. Administration is no part of his
duties. His office is to hold and safely keep the trust funds,
in accordance with the terms of the will or other instrument
creating the trust. Sometimes it is to pay income to the par-
ties entitled thereto, or to accumulate the same during a stated
period. If he transfers securities, it must be in pursuance of
an express authority contained in the trust itself, or by virtue

of an authority implied from the nature of said trust, or the character of the securities in his hands."

In Wood's Appeal, supra, we further said: " An executor's duty is not like that of a trustee, in whom property is vested, not for administration or sale, but custody and management for his cestui que trust. The party taking stock on pledge from such trustee deals with it at his peril, for there is no presumption of a right to sell it, as there is in the case of an executor: Duncan v. Jaudon, 15 Wall. 165; Shaw v. Spencer, 100 Mass. 382. ' The executor has the right to sell and transfer, and one who buys of him in good faith, and pays in money the price agreed upon, is not responsible for the application of the purchase money:' per HUNT, J., in Leitch v. Wells, 48 N. Y. 585. Letters of administration are always sufficient evidence of authority to transfer, because a sale and transfer of stock is in the line of the duty of an administrator. The powers of an executor or administrator differ from those of an ordinary trustee; the duty of the latter being custody and management, of the former, to dispose of the personal property to pay debts," etc.

Many other authorities are to the same effect as the foregoing, and a further citation of them is quite unnecessary. Had the defendant given a mortgage to trustees for a part of the trust fund, a payment to one of them without the knowledge or consent of the others would not have been a good payment, and a release by one of them would not have discharged the debt. But such was not this case. The mortgage in suit was the private individual obligation of the defendant Shannon to the mortgagee Brown, who also was a mere private person, and it was given for the sole purpose of securing Shannon's debt to Brown. The one, sole duty of Shannon was to pay the debt to Brown, or to the legal owner of the mortgage, at or after the time of its maturity. Brown having died, his administrators assigned the mortgage to the executors of Peter Fesmire and they were then the legal owners of the mortgage, and beyond all question were entitled in their capacity as executors to collect the money from Shannon.

It is argued for the appellees that under the will of Peter Fesmire his executors were directed to invest one third part of his estate for the use of his widow during her life, and that as

to her they were trustees, and that Shannon was bound to take notice of this trust, and could not lawfully pay to one of them. To this argument there are, as it seems to us, several replies. In the first place, granting that the executors were also trustees as to the widow, they were not technical trustees under the provisions of the will. No trustees were named in the will. The executors as such were required to invest money for the use of the widow and pay her the interest. Nevertheless, they were executors, and as such were clothed with the whole legal ownership of the mortgage. In that capacity, as between them and the defendant Shannon, they had the right to exercise the whole power of collection, which of course includes the power and lawful right to receive the money, as well without suit as with it. Shannon's duty was to pay the debt to the executors. He owed no duty of protection to the widow or to any one else. The right to receive the money was solely vested in the executors, in any event. No other persons than they had any right to receive it; they possessed all the power, and held all the legal right to collect it which could possibly exist, and their right of collection was a function of their power as executors and not as trustees. True, they owed a duty as trustees to the widow, but with that duty the defendant had nothing to do, and was in no wise responsible for it. When he paid the debt to the persons legally entitled to receive it, his whole duty was discharged. Therefore, it is a non-sequitur that he was responsible for the application of the money, after he had paid it to the persons who alone had the right to receive it, in the special capacity in which they did receive it. It may be granted that they held it as trustees, but they most certainly received it as executors.

Again; the defendant had no notice of the trust and was not, by consequence of any attitude of his, subject to a duty of inquiry. The assignment was made directly by the administrator of the mortgagee Brown, to the executors of Fesmire. It was nothing but an ordinary assignment which passed the title of the assignor to the assignees, and the assignees were described simply as " executors of the last will and testament of Peter Fesmire, deceased." This was notice to Shannon that the assignees were executors of Fesmire, but it was notice of nothing more. If he looked, therefore, to the assignment, he

Opinion of the Court.

found only an assignment to persons who were executors, and that was enough, because executors are the legal representatives of their testator, with full and absolute power to collect his debts, and that power was the only one with which Shannon had any concern. There was not the slightest reference to any trust of any kind in the assignment; and, as the executors possessed the whole power of collection, the defendant was subject to no duty of further inquiry, in order to discover whether, as between the executors and some third person, they were subject to a duty of trust.

But again; if he had searched for, and found the will of Peter Fesmire, he would have found no other persons but the executors to whom he could lawfully have paid the money. There was no technical trust expressed in the will. The duties that were to be performed, in the way of investment, were duties which the executors alone and by express mention were to perform, and they were such duties as executors may properly be required to perform. They were to sell the real estate, and make deeds to the purchasers, without liability on the part of the purchasers to see to the application of the proceeds. They were not to pay over to themselves, as trustees, the money to be invested, but were to invest it themselves in their capacity as executors, and pay over the interest to the widow and other persons entitled thereto. Nor would the will have informed the defendant that the particular money represented by his mortgage was devoted to the use of the widow; for there was another investment directed to be made, also, by the executors, in favor of certain grandchildren.

We have not been referred to any authority by the learned counsel for the appellees to support their contention that a trust arose of which the defendant was bound to take notice, either generally, or because the mortgage in question was taken by Fesmire's executors in their own right; but, on behalf of the appellants, we have been referred to several cases in which their contention appears to be sustained. Thus, in the case of Wood's App., 92 Pa. 379, one of four executors placed in the hands of his broker certain certificates of stock belonging to the estate of his testator. These certificates were pledged as collateral security for the personal indebtedness of this individual executor, and were accompanied by a blank bill of sale and

a power of attorney signed by him as acting executor. The broker pledged the stock to one who advanced money on it. The remaining executors filed a bill in equity to recover the stock. Held, they could not recover. We said: " The fact that the legal title to the stock was known to have previously been in the executor, and that the title of the holder appeared on its face to have been derived from him in his representative capacity, will not raise a suspicion, or put a purchaser on inquiry, for the reason that it is the executor's primary duty to dispose of the assets and settle the estate. . . . . We think the master was right in holding ' that the same principle which prevails in the case of an absolute owner, applies in the case of an executor who invests the holder with apparent ownership.' " In that case, the face of the paper gave notice that the stock belonged to the estate of the testator, and the broker who took it for the executor's private debt could not have held it, but the executor was clothed with the right of disposition by virtue of his office, and the holder had the right to act upon the assumption that this transfer was by lawful authority. So here ; the executors were clothed with the right to recover this mortgage, and the holder had a right to presume that a payment to one as executor would discharge the debt. We further said in the last case : " The defendants had a right to infer that McDowell & Wilkins were the owners of the stock, although the certificate showed title in Charles S. Wood, and the blank assignments and powers were signed by George R. Wood as acting executor. They found McDowell & Wilkins clothed with apparent ownership. The testator had given George R. Wood the strongest expression of confidence in making him an executor of his will, thereby vesting absolute power in him to sell and transfer the stock in the line of his duty. He was acting executor. Neither his co-executors, nor others interested in the estate, had taken a step to prevent him from committing waste. The law casts no duty upon a purchaser to ascertain if the trusted executor of the decedent's will is mismanaging the estate in fraud of creditors or legatees."

These remarks are precisely applicable to the present case. The executor, Josiah Kerper, was clothed by the testator's will with the absolute right to collect and receive from the defendant the mortgage debt now in suit. His co-executors had en-

trusted to him the custody and control of the mortgage papers, and the entire right to collect the interest annually from the defendant. This he actually did for nearly ten years, with the full knowledge and consent of the co-executors. They took no steps to prevent waste. The executor had the same right to collect the principal as he had to collect the interest. For four years after the principal was paid they made no attempt to collect it. No notice of any trust to which the executors were subject was given to the defendant, and he was necessarily lulled into a profound sense of security by the very long acquiescence of all the plaintiffs in the payments to one of their number which he was continually making. With what grace can they now be heard to allege in a court of justice, and as the basis of adverse judicial action, that these payments were illegal and that such of them as were not made to all the executors can be again recovered from him? To add to the injustice of such a course, it must be borne in mind that they also gave the mortgage papers to Kerper and permitted him to deliver them to the defendant when the final payment was made. If they did not expressly grant him that permission, they put it in Kerper's power to deliver the papers to Shannon when the money was paid, and therefore came within the principle that where one of two innocent persons must suffer, he whose act or omission caused the suffering must bear the loss. The case of Cottam v. Railway Co., 1 Johns. & Hem. 243, is not in strict analogy with this, because there the title resided in persons who were technical trustees, and the case came plainly within the principle, which we fully recognize, that the powers of trustees for custody and management must be exercised by all.

For the appellants, another very well considered case is cited, in close analogy to the present. It is Bogert v. Hertell, 4 Hill 493, and was a decision of the Court of Errors of New York, in which Chief Justice NELSON delivered a most elaborate and exhaustive opinion reviewing all the authorities up to that time. The testator directed his executors to make sale of such parts of his real estate as they might think proper, and disposed of the proceeds, together with his personal estate, by residuary bequests in favor of children and grandchildren, who were to receive the income during their lives and the principal to go to

their heirs after their deaths. The executors sold certain real estate and took a mortgage from the purchaser for part of the purchase money. Afterwards, one of the executors sold the mortgage to a stranger and transferred it to him, alone, without his co-executor joining, and misapplied the proceeds and failed. Subsequently, the parties interested sought to recover on the bond and mortgage from the assignee thereof, who had purchased it in good faith, and it was held by the vice chancellor and chancellor, that he had purchased with notice that the executors were trustees as well as executors, as they were required by the will to invest the moneys in their hands and pay the interest to the legatees. But the Court of Errors reversed the decree, and held that although there was a trust as between the executors and legatees, and although the mortgage was taken to themselves as executors after the testator's death, yet the purchaser of the mortgage took a good title to it which he could maintain, not only against the other executor, but against the beneficiaries of the fund in the hands of the executors. The chancellor held that, because the executors were in the position of trustees respecting this fund, the assent of all was necessary to pass title to the mortgage; but in this he was reversed by the Court of Errors, on the distinct ground that the fund was personal estate over which the executors, as such, had supreme control, and a conveyance by one was obligatory upon all. The opinion of the chancellor is reported in 9 Paige 52, and includes the ruling that the purchaser had actual notice that the mortgage was held by the executors as trustees, and therefore he could not acquire title from the transfer of one of them. The case goes further than is necessary in this, and it covers every question embraced in this, even the proposition that the loss should fall upon the parties interested rather than upon the purchaser. The opinion is too long even to quote from, but its reasoning is highly satisfactory, and much better meets the demands of justice than the contrary ruling of the chancellor.

The same question came before the Court of Common Pleas of Philadelphia county, No. 4, in the case of D'Invilliers *v.* Abbott, 4 W. N. 124, in which a very able and exhaustive opinion was filed by the learned President Judge Thayer, and it completely meets and expresses the views we entertain upon

this subject. He holds that while it is true that co-trustees must all join in an act disposing of an asset of a trust-estate, as a general rule, yet, when the asset is in the hands of executors, although they have a trust function to perform, the assignment or release by one is obligatory upon all, even although, in that case the asset was a mortgage bought by the executors, as in the present case, and there as here, one of the executors received the money due on the mortgage and alone entered the satisfaction. But it was held to be a valid exercise of power as done by one of several executors, and discharged the debt. After stating the doctrine as to trustees, he says: " But with regard to executors, the rule is and always has been very different. Their authority is joint and several. Not to dwell upon a distinction so well known and recognized, it is sufficient for me to say, in the language of Lord ELDON, in Walker v. Symonds, 3 Swanst. Ch. 53, 'without going through the cases, there is this distinction between executors and trustees, that one executor can and one trustee cannot give a discharge.' " The learned judge further says: " I have found in none of the able writers upon the subject of executors any trace of a distinction as to their rights and powers, arising out of the fact that property which they hold has been acquired since the testator's death, nor any intimation that a rule is to be applied to investments made by them as executors different from that which is to be applied to securities received from their testator." Although this case is not binding upon this court, we are entirely satisfied with the opinion and the reasoning in support of the conclusions reached.

It remains only to be added that in Fesmire's Estate, 134 Pa. 67, we held that the two co-executors, and so far as they were concerned, co-trustees of Josiah Kerper, were not liable for this part of the fund which had been embezzled by Kerper. And this, although they had settled a joint account, charging themselves specifically with the whole of the fund for the widow's use, although they were co-trustees in their relations with the widow, and although they had entrusted the mortgage and the collection of at least the interest to Kerper for ten years, and had not prevented him from collecting the whole of the principal. They knew all about their joint relation to the widow, and their duty to see that she received her income

Syllabus.

during the continuance of the trust, yet we held that they were not so culpably negligent as to become liable for the lost money. It seems to us there would be incongruity in holding that if Kerper might receive, and hold, and spend the money, without liability on the part of his co-trustees, yet Shannon, who knew nothing of the trust, who had a lawful right to deal with the plaintiffs as executors, and who paid his debt in the most perfect good faith to one of their number, must be obliged to pay the debt a second time, because he was negligent in not discovering a trust which was no part of his original obligation, which was not clearly expressed in any paper to which he was a party, or of whose contents he was not necessarily obliged to take notice. At the time of the assignment of the mortgage in June, 1875, Fesmire had been dead only two years; and in so short a time as that it did not at all follow that Shannon was subject to a duty to infer that the mortgage was acquired for a permanent investment, and hence there is not in this circumstance anything to put him upon inquiry for a trust, out of the course of administration. The executors' account had only been filed nine days, and was not yet confirmed, and as Shannon had no interest in it he certainly cannot be charged with a knowledge of its contents, and with negligence in not pursuing a search for a trust. Upon every consideration, we are of opinion that Shannon is not subject to any duty, legal or equitable, to pay this debt a second time.

Judgment reversed.