Dawn M. STANFORD–GALE and John P. O'Neill, Administrators of the Estate of Jean Marie Stanford, Deceased,

v.

TAX CLAIM BUREAU OF SUSQUEHANNA COUNTY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2002.

Decided Jan. 13, 2003.

Reargument Denied March 7, 2003.

Robert J. Hollister, Montrose, for appellant.

Joel Friedman, Media, for appellee.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Appellant Tax Claim Bureau of Susquehanna County (Bureau) appeals from an order of the Court of Common Pleas of Susquehanna County (Trial Court) which granted the petition of Appellees Dawn M. Stanford–Gale and John P. O'Neill, the co-administrators for the Estates of Charles H.J. Stanford and Jean Marie Stanford (collectively, Estate). The Estate petitioned to set aside a tax sale of real property (Petition). The Trial Court, in granting the Estate's Petition, held that the Bureau had failed to afford to the Estate the proper notice of the sale in question as mandated by Pennsylvania law. We reverse.

Charles H.J. Stanford and Jean Marie Stanford (Decedents) were killed as the result of an automobile accident on August 13, 1987. At the time of their deaths, Decedents were the owners of 10 acres of undeveloped real property located in Jackson Township, Susquehanna County, Pennsylvania. (Property). After their deaths, Decedents' daughter Dawn Stanford–Gale (Stanford–Gale), a resident of Montgomery County, Pennsylvania, was appointed by the Register of Wills of Delaware County as administratrix of Decedents' Estate. In 1989, John O'Neill (O'Neill) was appointed by the Register of Wills of Delaware County as co-administrator of Decedents' Estate. During the period from the Decedents' death through 1999, all taxes on the Property up to and including those due for 1998 were paid by the Estate, and the Bureau had corresponded with the Estate, via the Decedents' former address, during those years regarding the payment of taxes on the Property.

In April of 2000, and in April of 2001, notices of delinquent taxes owed for the years 1999 and 2000, respectively, were mailed by the Bureau via certified mail return receipt requested to the Decedents at their former address. Those notices were not mailed to the address of the Estate, but the receipts therefor were returned to the Bureau with the signature of O'Neill. In August of 2001, two separate timely notices of a scheduled tax sale (Sale) of the property were sent to Decedents at their former address, and again those receipts were returned to the Bureau with O'Neill's signature.

On September 17, 2001 the Property was sold at the Sale at issue. On September 20, 2001, the Bureau received a certified check, dated August 24, 2001, from the Estate for the back taxes due on the Property. The Bureau returned that check to the Estate with a letter stating that the Property had been sold. On November 20, 2001, the Estate filed the Petition at issue, and a hearing thereon was held before the Trial Court.

Upon receiving evidence from both parties, the Trial Court found that the Bureau had provided no notice of the delinquent taxes or scheduled Sale to the Estate at its address, but had provided notice solely to the Decedents' former address as recorded in the tax assessment office. The Trial Court further found that, notwithstanding the Bureau's claim that it had no notice of the Decedents' deaths, the Bureau had failed to go through all of its records with respect to the Property, and had failed to provide the Estate with proper notice of the Sale.

Before the Trial Court, the Bureau argued that it had met all notice requirements when it mailed notice to the Decedents' last known address, as the record

owners according to the assessment roles, and because of the Bureau's lack of knowledge of the Decedents' deaths. The Bureau also argued that, even if it was required to provide notice to the Estate, that notice was accomplished when O'Neill, as co-administrator of the Estate, signed for the notices sent by certified mail to the Decedents.

The Trial Court rejected the Bureau's arguments, concluding, *inter alia,* that the Bureau had failed to satisfy its burden of proving that it had provided sufficient notice, that the Estate therefore was denied adequate due process in regards to the Sale at issue, and that the Sale must therefore be set aside. The Bureau now appeals to this Court from that April 18, 2002 order of the Trial Court.

██ This Court's scope of review is limited to determining whether the trial court abused its discretion, rendered a decision lacking supporting evidence, or erred as a matter of law. *In re: Upset Tax Sale Held 11/10/97,* 784 A.2d 834 (Pa.Cmwlth. 2001), *petition for allowance of appeal denied,* 569 Pa. 688, 800 A.2d 936 (2002).

The Bureau asserts one issue upon appeal: whether the Trial Court erred in

concluding that the Bureau failed to fulfill its obligation of providing notice of the tax sale to the owner, reputed owner, or entities whose property rights might be affected by the tax sale.

As succinctly cited by the Trial Court in its opinion, the forfeiture of a person's property rights for failure to pay taxes is a momentous event under the Pennsylvania and United States Constitutions. *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 489 A.2d 1334 (1985). The tax sale laws were enacted with the primary purpose of insuring the collection of taxes, and not to strip away citizens' property rights. *Id.* Accordingly, the Pennsylvania and United States Constitutions require, *inter alia,* adequate notice to property owners prior to the execution of a tax sale. *Id.*

The Real Estate Tax Sale Law (Law)[1] requires notice[2] to a property owner before the execution of a tax sale, including reasonable efforts by a tax bureau to discover the identity and addresses of persons whose property interests may be affected.[3] Sections 602(e)(1) and (2) of the Law require a tax bureau to provide notice of a pending tax sale to the "owners", as

---

**1.** Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

**2.** Section 602 of the Law, 72 P.S. § 5860.602, states, in relevant part:

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties

to be sold as stated in the claims entered and the name of the owner.

☆ ☆ ☆

(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

**3.** Section 602(e)(2) of the Law, 72 P.S. § 5860.607(e)(2), states:

If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale

defined by the Law, at the last post office address known to the tax collector and the county assessment office. Section 102 of the Law[4] defines "owner" in relevant part as the person in whose name the property is last registered, or the person whose name last appeared as owner of record on any deed.

In *Michener v. Montgomery County Tax Claim Bureau,* 671 A.2d 285 (Pa. Cmwlth.1996), we held that if the owner to whom a notice of tax sale was sent is deceased and letters testamentary were granted, as in the case *sub judice,* no further evidence is needed to trigger the reasonable efforts requirement on the part of the tax bureau. Further, a tax claim bureau must make reasonable, but not extraordinary, efforts to provide notice under the Law. *Id.* Those reasonable efforts must include a search of dockets and indices of the county tax assessment offices, recorder of deeds, prothonotary's office, and contacts to any apparent alternate address which may have been written on or in the file pertinent to the property at issue. Section 602(e) of the Law; *Accord In re: Tax Claim Bureau of Beaver County,* 143 Pa.Cmwlth. 659, 600 A.2d 650 (1991).

■ However, actual notice of a pending tax sale waives strict compliance with statutory notice requirements, and technical deficiencies in those notice requirements do not invalidate a tax sale. *Sabbeth v. Tax Claim Bureau of Fulton County,* 714 A.2d 514 (Pa.Cmwlth.1998). In *Sabbeth,* this Court reversed a trial court's invalidation of a tax sale, holding that where the property owner had actual notice, strict compliance with the statutory requirements was waived. In that precedent, an employee of the property owner's company, but not the actual property owner, signed for the certified mail containing notice of the sale. Sabbeth, the property owner and taxpayer on the property in previous years, was imputed to have implied actual notice even though she claimed that she did not actually personally receive or open that mail until 53 days after the sale.

■ Within the framework of the above-cited applicable law, the dispositive instant issue can be framed quite narrowly: whether the notice received by O'Neill, as co-administrator of the Estate, constitutes actual notice to both co-administrators and the Estate, thereby eliminating the burden of the Bureau to show strict compliance with the reasonable efforts requirements of the Law.

The Bureau argues that O'Neill, as a co-administrator of the Estate, received and signed for the certified mailing of the delinquent tax notices and the Sale notices. The Estate, the Bureau asserts, was thereby given actual notice as further evidenced by the drafting of a certified check by O'Neill on August 24, 2002, two days after the certified Sale notice mailing was signed for, and nearly a month before the actual Sale. The Bureau argues that any technical failure on its part to make reasonable efforts to ascertain the entities that might be

shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

4. 72 P.S. § 5860.102.

affected by the Sale was cured by the actual notice to that entity under *Sabbeth.*

The issue of whether actual notice of a tax sale to one co-administrator of an estate is sufficient to bind the estate, in the absence of notice to the remaining co-administrator, is apparently one of first impression. There are, however, two lines of precedent that provide guidance to the instant matter: the sufficiency of tax sale notice to only one of multiple owners, and the binding effect of a sole co-administrator's actions upon an estate.

The Estate argues that the Trial Court was correct in holding that Section 602 requires that, where multiple owners exist, each is entitled to notice. The Estate supports their argument with citation to established case law that establishes that "each", in relation to notice requirements, holds it everyday meaning. In *Boehm v. Barnes,* 63 Pa.Cmwlth. 87, 437 A.2d 784 (1981), we held that where a partnership stands as owner of a property, notwithstanding the prior mailing of tax bills to one partnership address, each partner required separate notice of a tax sale on the property. In *LaBracio v. Northumberland County,* 78 Pa.Cmwlth. 533, 467 A.2d 1221 (1983), tenants in common as property owners were held to each be required to receive separate notice of a pending tax sale. In *Appeal of Mangine,* 87 Pa. Cmwlth. 47, 487 A.2d 45 (1985), husband and wife owners, as tenants in entirety, were held to each require receipt of separate notice of a tax sale. This rule of separate required notice of a tax sale has also been applied to remaindermen, *Donaldson v. Ritenour,* 105 Pa.Cmwlth. 383, 524 A.2d 1044 (1987), and to concurrent-owner trustees that were individually listed as multiple owners on a deed, *Krumbine v. Lebanon County Tax Claim Bureau,* 541 Pa. 384, 663 A.2d 158 (1995).

 While this body of law is instructive on the general issue of multiple notices to multiple owners of property prior to a tax sale, we find this line of precedent to ultimately be inapplicable to the instant facts. Property owners who hold only an interest in a property, but not the entire interest, do not correlate to the instant facts involving co-administrators. It is undisputed that, under Pennsylvania law, co-administrators are regarded as one person, and each possesses full power and control over the estate of a decedent. *Selig v. Selig,* 217 Pa.Super. 7, 268 A.2d 215 (1970). The authority of each co-administrator is joint and several, and each one has the power to bind the estate to an agreement. *Id. Accord Holmes v. Lankenau Hospital,* 426 Pa.Super. 452, 627 A.2d 763 (1993), *petition for allowance of appeal denied,* 538 Pa. 671, 649 A.2d 673 (1994) (The signature of one co-administratrix on a settlement release, discharging liability in relation to the decedent's fatal accident, binds the estate.).

In *County of Allegheny v. McCullough,* 659 A.2d 40 (Pa.Cmwlth.1995), the property owner, as a tenant in common with the estate of her deceased ex-husband, entered into a contractual installment payment agreement with the County in which the County agreed to forego enforcement of its delinquent tax collection rights in consideration for monthly payment toward the taxes owed on the subject property. The property owner failed to remain current on her obligations, and due to that delinquent status, the County sought a tax lien against the property. After serving the surviving property owner and one of the two co-administrators of the estate, the County sought and received a default judgment. Following the trial court's dismissal of the owner's and co-administrators' petition to strike or open the default judg-

ment, we held that the County's service of only one of the co-administrators, prior to obtaining the default judgment against the subject property, was sufficient to bind the estate. After citing favorably to *Selig*, we wrote:

> Initially, we note that an administrator, like an executor, has a fiduciary duty to the estate. Furthermore, the County's service of the writ on ... [one] co-administrator placed the estate on notice that the County sought payment for unpaid taxes. Once the County effectuated service on [one co-administrator], it was incumbent upon him to take the appropriate steps to safeguard the interest of the estate. Thus, we hold that the County's failure to serve [one of the co-administrators] does not require the striking of the default judgment.

*McCullough*, 659 A.2d at 43–44 (citation omitted). We find *Selig*[5] and *McCullough* to be most persuasive to the instant matter, especially in relation to the joint and several authority held by co-administrators as contrasted to the lack of same in the multiple-owner tax sale precedents cited above.[6]

In the case *sub judice*, the parties do not dispute that O'Neill, as co-administrator of the Estate, received timely actual notice of the pending Sale. While under *Michener* the return of that notice's receipt signed by a party other than the decedent owner triggered the reasonable notice efforts requirement on the part of the Bureau, any subsequent technical failure on the Bureau's part to make those reasonable efforts is cured by the actual notice to O'Neill as the Estate's co-administrator.[7]

Accordingly, we reverse.

### ORDER

AND NOW, this *13th* day of *January*, 2003, the order of the Court of Common Pleas of Susquehanna County, dated April 18, 2002, at No. 2001–1214 C.P., is reversed.

5. We note that, similar to the cogent recognition of our esteemed colleagues on the Superior Court, the joint and several fiduciary duty of co-administrators to the estate that they serve, and the fear of being held liable for a breach thereof by either single co-administrator, creates or should create a "self-protection compulsion" on the part of a notified co-administrator to notify his or her co-administrator as to pending legal action directed toward their estate. *Selig*, 268 A.2d at 217–218.

6. We further note that, for over one hundred years in our Commonwealth, co-*executors* have been regarded in the law as a single person, with the acts of any one in regards to the administration of the estate deemed to be the acts of all, and binding upon the estate. *See, e.g., Wood's Appeal*, 92 Pa. 379 (1880) (The acts of one co-executor are deemed the

acts of all co-executors, and thereby bind the others.); *Fesmyer v. Shannon*, 143 Pa. 201, 22 A. 898 (1891) (Co-executors are regarded in the law as an individual person, and the acts of any one in relation to the administration of the estate are deemed the acts of all, and bind the others.).

7. We emphasize that our disposition in this case has been made notwithstanding the undisputed facts of record that Stanford–Gale and O'Neill were estranged relatives that were on opposing sides of litigation not the subject of the instant appeal. *See* R.R. at 29a. While their failure to directly communicate may be an issue for another forum, it has no bearing on the resolution of the instant legal issue.