IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Estate of Jane Cherry : 
Lamberton, : 
            Appellant : 
               : 
           v. : No. 237 C.D. 2015
               : Submitted: December 4, 2015
Lackawanna County Tax Claim : 
Bureau and Savana Properties, LLC : 

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI          FILED: January 6, 2016

        The Estate of Jane Cherry Lamberton (Estate) appeals from an order of the Court of Common Pleas of Lackawanna County (trial court) dismissing the Estate's petition to set aside a tax sale of its property located in Jessup Borough (Property) conducted pursuant to the Real Estate Tax Sale Law (Law)[2] based on a finding that the Lackawanna County Tax Claim Bureau (Bureau) complied with the

---

    [1] This matter was assigned to this panel before January 1, 2016, when President Judge Pellegrini assumed the status of senior judge.

    [2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101–5860.803.

notice provisions as set forth by Section 602 of the Law, 72 P.S. §5860.602. For the reasons that follow, we reverse.

Jane Cherry Lamberton (Decedent) died testate on January 19, 2014.[3] On August 5, 2014, letters of administration were taken out in Wayne County with her husband, Thomas Lamberton, who was appointed Administrator of the Estate. Decedent had devised the Property to her brother, Robert Cherry (Devisee), who resided at the Property. Upon Decedent's passing, the Estate became owner of the Property by operation of law.

On June 26, 2014, the Bureau sent Decedent a 30-day notice of the upset tax sale to her Wayne County residence via certified mail restricted delivery. The notice of the upset tax sale was returned to the Bureau as unclaimed after three delivery attempts on July 5, July 9 and July 20, 2014. On August 29, 2014, the notice was published in the Scranton Times, the Citizens' Voice and the Lackawanna County Jurist, identifying the Property. On September 2, 2014, a notice of the upset tax sale was posted on the front door of the Property, and on September 4, 2014, Chris Munley, the Estate's attorney, contacted the Bureau to negotiate an installment stay of sale agreement pursuant to Section 603 the Law, 72 P.S. §5860.603. A payment agreement was reached between the two parties.

---

[3] Prior to her death, the Decedent resided at 1889 Windemere Lane and 1187 Hideout, Lake Ariel, Wayne County, Pennsylvania 18436.

Notwithstanding this agreement, four days later, on September 8, 2014, the Bureau sent Decedent, not the Estate, at Decedent's Wayne County residence, a ten-day notice of the upset tax sale by certified mail restricted delivery. Again notwithstanding this agreement, on September 29, 2014, the Bureau conducted an upset tax sale of the Property and entered into an agreement for private sale of the Property with Savana Properties, LLC (Buyer) for $7,716.49.[4]

On October 14, 2014, the Estate filed a petition to set aside tax sale, averring, *inter alia*, that it never knew of the tax sale due to Lackawanna County's failure to follow the procedure set forth by Section 602 of the Law because the Estate never received actual notice of the sale by way of a certified mailing and the Property was not posted at least ten days prior to the upset tax sale. The Bureau opposed the motion, arguing that it adequately complied with the notice requirements of the Law.

Before the trial court, Ronald Koldjeski, Deputy Director of the Bureau, testified that the upset tax sale was advertised in the Scranton Times, the Citizens Voice and the Lackawanna County Jurist on August 29, 2014. He stated that a notice of return and claim was sent by certified mail to Decedent's Wayne County address, and on May 22, 2013, Mr. Lamberton signed the certified mail return.[5] He also

---

[4] All the parties agree that an agreement was entered into with the Estate to suspend the sale of the Property. We note that the agreement was not part of the record and we are not sure that it was reduced to writing. We are also perplexed as to how an agreement that allows for time payments entered into on September 4, 2014, can be breached by September 8, 2014, when the ten-day notice was sent out and the Property was sold on September 27, 2014, approximately three weeks after the agreement was entered.

[5] Mr. Koldjeski explained that the type of information contained in the notice of return and claim is "[p]retty specific information, it tells you that they are effectuating a claim against the **(Footnote continued on next page…)**

testified that the Bureau sent Decedent a notice of public sale to her Wayne County residence via certified mail restricted delivery, that it was offered for acceptance on three occasions, and then returned as no one signed for it. Mr. Koldjeski also confirmed that after having received the unsigned 30-day notice, the Bureau posted the notice of the upset tax sale on the front door of the Property on September 2, 2014, and mailed a ten-day notice to Decedent's Wayne County residence on September 8, 2014. Mr. Koldjeski explained that per the Bureau's regular practice, when the notice was posted on the Property, the constable posting the notice also personally served the notice to someone who signed for the posting at the Property.[6]

Mr. Koldjeski also testified that prior to the date of the upset tax sale, on September 4, 2014, Mr. Munley contacted him wanting "an okay for a four pay plan for the [E]state. He said the [E]state is being settled. The person living there is the person inheriting the home." (R.R. at 32a.) Mr. Koldjeski testified that in response to Mr. Munley's request, he approved the payment plan that day, but no payments were made causing the Property to be sold at the September 29, 2014 upset tax sale.

---

**(continued…)**

[P]roperty for taxes for the current year of 2014[,]" and it also informs the recipient "that there are different types of payment standards, how much you can pay at different points of the year, and also gives you a warning that tells you that if you fail to pay the [P]roperty may be sold at a fraction of its value at the next sale." (Reproduced Record (R.R.) at 26a.)

[6] The record contains the notice with the signature; however, the signature is indecipherable and it is unclear as to who signed for the posting.

On cross-examination, Mr. Koldjeski testified that the Bureau was unaware as to whether the Decedent was alive or deceased until his conversation with Mr. Munley, during which Mr. Munley stated that he was trying to settle the [E]state and it "turned a light bulb on in [Koldjeski's] head that there was [an] estate here, but it also turned a light bulb on that [Munley was] going to pay – the offer was to pay the down payment of the 25 percent and give [Munley] an opportunity to settle the [E]state…." (R.R. at 41a.) Mr. Koldjeski testified, however, that upon realizing that the Property was in an estate, the Bureau did not send the Estate notice of the pending sale given his conversation with Mr. Munley because Mr. Munley was "the attorney for the [E]state and [Munley] knew that this [P]roperty was going to be offered for sale if it wasn't paid." (*Id.*) Mr. Koldjeski stated that after the Bureau found out that Decedent was deceased, it waited for the bill to be paid per his conversation with Mr. Munley. Mr. Koldjeski also testified that the Buyer had already made payment on the Property but that the deed has been held because of the objection to the sale.

Mr. Lamberton testified that in his housing development, the post office registers each property a mailbox at a certain location for postal convenience, and that when he receives certified mail, the post office sends him a notice that there is mail at the post office to be picked up rather than delivering it directly to his home. He testified that after his wife passed away, the post office notified him to pick up certified mail, but that when he went to pick it up, the post office would not give it to him because the mail was registered in Decedent's name. He stated that he did not know who the mail was from and did not receive any other notification from the Bureau that the Property was in the process of an upset tax sale. Mr. Lamberton testified that he never saw the posting on the Property, but that Devisee and a renter

5

lived at the Property. He also testified that because he has not had any communication with Devisee since Decedent's death, he was not aware that the Property was up for tax sale until Mr. Munley informed him of it. He stated that nothing had come to the Estate from the Bureau since Decedent's death, and that he never received any ten-day notice or phone calls regarding the sale of the Property.

Mr. Lamberton acknowledged, though, on cross-examination, that Devisee had informed him that the Property was posted on September 2, 2014, with notice of the tax sale and his attorney, Mr. Munley, informed him that the Property was to be sold. With regard to the payment plan agreed upon by the Bureau and Mr. Munley, Mr. Lamberton stated that he was unaware of matters dealing with payment as they were arranged between Decedent and Devisee.

The trial court dismissed the Estate's petition to set aside tax sale and confirmed the upset tax sale of the Property, finding that the Bureau complied with all of the notification provisions of the Law. In making its determination, the trial court specifically noted that Mr. Koldjeski testified that the Estate contacted the Bureau on September 4, 2014, to negotiate an installment stay of sale agreement pursuant to Section 603 of Law, but that the Estate did not honor the agreement. The trial court concluded that the Buyer has valid title to the Property.

On appeal,[7] the Estate again contends that the Bureau failed to meet its burden of proof that it met the notice requirements of Section 602 of the Law[8] and,

---

[7] Our scope of review of an order denying a petition to set aside a tax sale of real property is limited to determining whether the trial court abused its discretion, rendered a decision unsupported **(Footnote continued on next page…)**

6

thus, the sale of the Property was void. Specifically it argues that because the Bureau's notices were addressed to Decedent after she was deceased, any notice sent to her is meaningless. The Estate also argues that any notice of sale sent by certified mail to Decedent cannot be imputed to the Administrator, Thomas Lamberton, because given the restrictive nature of certified mail, Mr. Lamberton could not retrieve the letter as it was addressed Decedent.

---

**(continued…)**

by the evidence, or erred as a matter of law. *McElvenny v. Bucks County Tax Claim Bureau*, 804 A.2d 719 (Pa. Cmwlth. 2002), *appeal denied*, 819 A.2d 549 (Pa. 2003).

[8] With regard to upset tax sales, the Law requires the tax claim bureau to provide three types of notice: published notice, mail notice and posted notice. *See* Section 602 of the Law, 72 P.S. §5860.602. The Law's provision governing mail notice provides:

> (e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
>
> (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.
>
> (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. §5860.602(e)(1), (2). Section 102 of the Tax Law, 72 P.S. §5860.102, defines "owner," in relevant part, as the person in whose name the property is last registered, or the person whose name last appeared as owner of record on any deed.

There is no dispute that the notice requirements of Section 602 have not been met. However, in *Stanford-Gale v. Tax Claim Bureau of Susquehanna County*, 816 A.2d 1214, 1217 (Pa. Cmwlth. 2003), like many other cases, we have held that the technical requirements need not be met when the owner of the property had actual notice. In that case, the county had been put on notice that an estate had been raised, but that certified mail notice of sale was addressed to the estate and not to the decedent. However, the notice of sale was signed for by one of two co-administrators of the estate. We held that even though the notice was addressed to the decedent and not the estate, notice was still sufficient because there was actual notice to the estate stating that:

> [A] tax claim bureau must make reasonable, but not extraordinary, efforts to provide notice under the Law. Those reasonable efforts must include a search of dockets and indices of the county tax assessment offices, recorder of deeds, prothonotary's office, and contacts to any apparent alternate address which may have been written on or in the file pertinent to the property at issue. However, *actual notice of a pending tax sale waives strict compliance with statutory notice requirements, and technical deficiencies in those notice requirements do not invalidate a tax sale*.

*Id.* at 1217 (emphasis added and citations omitted). The question, then, is whether the Estate had actual notice of the sale in this case. It did not.

The certified mail notices to Mr. Lamberton were ineffective because his testimony establishes that he was unable to sign for notices sent by certified mail, return receipt, because they were addressed to the Decedent and the post office would not let him "sign" for that mail. However, he would have been able to sign for them

if they were addressed to the Estate. This is particularly important with regard to the required ten-day notice of sale sent on September 8, 2014, that gives an owner the last chance to remove the Property from the sale. That notice was sent after the agreement had been entered with the Bureau to suspend the sale, and the Bureau admitted that it had notice on that date of the owner's death and that the Estate was responsible for the Property.

Similarly, just because Mr. Lamberton had been informed that the Property had been posted on September 2, 2014, that it was going to be exposed to tax sale does not mean notice had been given to the Estate that the sale was going to take place. That posting occurred before the agreement was entered with the Estate's attorney and the Bureau to stay the sale, thereby vitiating any knowledge through posting that the Property was still going to be sold. Because it has not been established that Thomas Lamberton, the Administrator of the Estate, and by extension, the Estate, had actual notice of the Property's pending upset tax sale, the Bureau has not demonstrated that it properly subjected the Property to tax sale.

Accordingly, we reverse the trial court's order.

_____
DAN PELLEGRINI, President Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Estate of Jane Cherry :
Lamberton, :
   Appellant :
       :
   v.    : No. 237 C.D. 2015
       :
Lackawanna County Tax Claim :
Bureau and Savana Properties, LLC :

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>January</u>, 2016, the order of the Court of Common Pleas of Lackawanna County dated February 25, 2015, at No. 2014-CV-05781, is reversed.

_____
DAN PELLEGRINI, President Judge