# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Zion Bullitt Avenue Limited     :
Partnership,                    :
                  Appellant      :
             v.                  :
                                 :  No. 1977 C.D. 2015
Westmoreland County Tax Claim   :  Submitted: August 12, 2016
Bureau                          :
                                 :
             v.                  :
                                 :
Moween Trust                    :
Re:  Tax Map No. 29-01-10-0-156  :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                      **FILED:  December 21, 2016**


This is an appeal filed by Zion Bullitt Avenue Limited Partnership (Zion) from a decision of the Court of Common Pleas of Westmoreland County (trial court) overruling Zion's objections and exceptions to an upset tax sale of a property in Penn Borough, Westmoreland County that it owned (the Property).[1] For the reasons set forth below, we affirm.

As stipulated by the parties, Zion is a limited partnership whose limited partners are Abraham Zion and his three children, Mark, Joshua, and

---

[1] The Property, sometimes referred to as the "Penn warehouse," was used to store metal-working equipment and clothing manufacturing equipment such as presses and sewing machines. (August 19, 2014 Deposition of Mark S. Zion, Reproduced Record at 360a, 363a.)

Adina. (Stipulated Facts, Reproduced Record (R.R.) ¶1 at 125a.) Zion Pennsylvania Corporation is a Delaware corporation created to serve as Zion's general partner; since 1986, Zion Pennsylvania Corporation has been the general partner of Zion and has held a one percent interest in Zion. (*Id*.) Until December 2011, Abraham Zion had managing responsibilities for Zion; Mark Zion assumed managing responsibilities for Zion as of January 2012 and has been involved with the Property in varying degrees since 1986. (*Id*., R.R. ¶¶ 3,7 at 126a.)

Zion owned the Property from at least 1986 through September 10, 2012, the date of the tax sale, and throughout this period the Westmoreland County Tax Claim Bureau (WCTCB) listed Zion's mailing address as 41 Madison Avenue, New York, NY, 10010 (the Madison Avenue Address). (Stipulated Facts, R.R. ¶ 8 at 126a.) Zion paid all property taxes levied upon the Property through 2009, but in 2010, 2011, and 2012, Zion failed to pay any property taxes on the Property. (*Id*., R.R. ¶ at 127a.)

The tax bills for the Property in 2010, 2011, and 2012 were each addressed to the Madison Avenue Address; each was returned by the United States Postal Service to the tax collector for Penn Borough. (*Id*., R.R. ¶¶ 12, 14-16 at 127a-128a.) Following the return of the tax bill in 2010, the tax collector accessed, via an internet search, an address for Zion at 4630 Fieldstone Road, Riverdale, New York 10471-3314 (the Fieldstone Address), which was at all relevant times the residence of Abraham Zion. (*Id*., R.R. ¶¶ 14-16 at 127a-128a.) The tax collector, who was prohibited from changing the address without a signed request from the taxpayer, re-sent the tax bill in an envelope requesting that Zion change its address; the tax bill was not returned, and Zion did not request a change of address. (*Id*.) The tax bills for 2011 and 2012 were similarly re-sent to the Fieldstone Address together with requests that Zion change its address and a

2

change of address form, but no address change was made. (*Id*., R.R. ¶¶ 15-16 at 127a-128a.).

On April 6, 2011, the WCTCB sent, via certified letter to the Madison Avenue Address, a Notice of Return and Claim showing outstanding taxes for the Property for 2010; the Notice of Return and Claim was returned as not deliverable as addressed and unable to forward; the WCTCB made no further attempts to obtain a different address to which to send the Notice of Return and Claim. (*Id*., R.R. ¶¶ 22-23 at 129a.) On May 7, 2012, the WCTCB sent, via certified mail restricted delivery, a Notice of Public Sale to the Madison Avenue Address; the notice was returned marked undeliverable. (*Id*., R.R. ¶ 28 at 130a.) The WCTCB sent a second notice, using a proof of mailing, to the Madison Avenue Address 30 days prior to the tax sale. (*Id*., R.R. ¶ 32 at 130a.) On July 26, 2012, the Westmoreland County Sheriff posted the Property, which posting was observed by numerous individuals. (*Id.*, R.R. ¶¶ 37, 39 at 131a-132a.) A Notice of Public Sale for the Property was published both in newspapers in general circulation and in the Westmoreland County Law Journal. (*Id*., R.R. ¶ 44 at 133a.) No Zion partner visited the Property between the date of the posting and the date of the tax sale. (*Id*., R.R. ¶ 45 at 133a.) On September 10, 2012, the WCTCB exposed the Property for a tax upset sale for a price of $16,407.14 for delinquent taxes for the years 2010 and 2011, the current taxes for the 2012 year, plus the costs of sale, and Moween Trust purchased the Property for $20,182.66. (*Id*., R.R. ¶¶ 47-48 at 133a.) Zion filed Objections and Exceptions to the tax sale of the Property on October 17, 2013; the trial court permitted the filing of Amended Objections and Exceptions on January 23, 2015. (*Id*., R.R. ¶¶ 49, 51 at 133a.)

At an evidentiary hearing held on March 25, 2015, the trial court received testimony and exhibits and requested the submission of briefs. Oral

argument was held on July 30, 2015. On September 16, 2015, the trial court issued an opinion and order denying Zion's amended objections and exceptions, and confirming the September 10, 2012 tax sale.

In its opinion, the trial court acknowledged that given Zion's "substantial" arguments as to the WCTCB's failure to comply with technical notice requirements of the Real Estate Sales Tax Law (RESTL),[2] Zion may well have prevailed had a failure to comply with such requirements been the only issue; the trial court determined, however, that the requirement of strict compliance with the RESTL had been waived, because Zion clearly had actual notice of the tax sale. (Trial Court Opinion and Order, R.R. at 193a-205a.) Zion timely appealed the trial court's decision to this Court.[3]

Before this Court, Zion argues that the trial court rendered its decision that Zion had actual notice of the tax sale without supporting evidence, contending that its conclusion depends entirely on the deposition testimony of Frank Trigona, who had been engaged by Zion to monitor an environmental cleanup involving demolition and remediation at the Jeannette Glass Plant, one of three other properties, in addition to the Property, that it owned in Westmoreland County.[4]

---

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803

[3] In tax sale cases, this Court's review is limited to determining whether the common pleas court abused its discretion, clearly erred as a matter of law, or rendered a decision with a lack of supporting evidence. *Dwyer v. Luzerne County Tax Claim Bureau*, 110 A.3d 223, 225 n.2 (Pa. Cmwlth. 2015).

[4] In a 2015 unreported opinion, *Zion Bullitt Avenue Limited Partnership v. Westmoreland County Tax Claim Bureau, Westmoreland County Industrial Development Corporation, and City of Jeannette*, (Pa. Cmwlth., No. 1396 C.D. 2014, filed June 4, 2015), *appeal denied*, 132 A.2d 460 (Pa. 2016), this Court considered Zion's appeal from a trial court order denying Zion's objections and exceptions to the tax sale of the Jeannette Glass Plant property, which occurred on the same day as the tax sale of the Property. In that case, our Court affirmed the trial court, which determined that despite Mark Zion's testimony that neither he nor his father signed the **(Footnote continued on next page…)**

4

(August 19, 2014 Deposition of Mark S. Zion, R.R. at 368a, 371a.) Zion asserts that because the trial court erred in its determination that Zion had actual notice of the tax sale, we should then set aside the tax sale as a result of the WCTCB's failure to comply with the pre-sale notice requirements of the RETSL. Zion asserts that the WCTCB: 1) failed to comply with the notice provisions of Section 308(a) of the RETSL, 72 P.S. § 5860.308(a), by failing to post the Property with a notice of return of taxes and entry of claim after receiving notice from the postal authorities that the Notice of Return and Claim sent by certified mail to the Madison Avenue Address was returned as undeliverable; and 2) failed to comply with the notice provisions of Section 602(e) of the RETSL, 72 P.S. § 5860.602(e)(2), and Section 607(a) of the RETSL, 72 P.S. § 5860.607a(a), by failing to undertake any reasonable additional efforts to identify Zion's correct address and notify it at such address after it received notice that the mailed Notice of Sale was not delivered to Zion.

At his deposition, Mr. Trigona testified that he became aware of the impending tax sale of the Property when he encountered Lou Martino, Westmoreland County Deputy Sheriff (the Sheriff) at the Jeannette Glass Plant property, as the Sheriff was posting the property for nonpayment of taxes. (October 23, 2013 Deposition of Frank M. Trigona, R.R. at 288a.) Mr. Trigona indicated that he asked the Sheriff if he was also posting Zion's other properties,

---

**(continued…)**
receipt for the notice of tax sale, which was sent to the Jeannette Glass Plant property's registered mailing address, the Fieldstone Road Address, and signed by someone using the name "Zion," the requirements of RETSL had been met, and even assuming Abraham Zion did not personally sign the return receipt for the notice of the tax sale, Zion received implied notice of the sale, which was sufficient to establish actual notice.

5

and the Sheriff replied that he was. (*Id.*, R.R. at 290a.) Mr. Trigona stated that he then entered a construction trailer at the plant site, phoned Mark Zion, and told him that the Sheriff had just told him that he was posting all four of the Zion-owned properties, including the Property. (*Id.*, R.R. at 293a.) Mr. Trigona indicated that there were a few other people in the trailer when he made this phone call, including Chelsey Rittenour, who was the general contractor performing demolition for Zion. (*Id.*, R.R. at 294a.) Mr. Trigona further testified that during the phone call, Mark Zion directed him to go to all the other properties, including the Property, and pick up the postings and put them in the construction trailer. (*Id.*, R.R. at 296a.) Mr. Trigona recounted that he would have to drive to the Property, and he did not know if he would be able to get around to it that day, to which Mark Zion replied, "Okay. Just get them, put them in the trailer." (*Id.*) At the conclusion of the phone call, Mr. Trigona testified, a general discussion ensued among the people in the trailer, including Dan Hamilton, a Zion employee, regarding the fact that Zion had not paid its taxes. (*Id.*, R.R. at 294a-295a.) A few days later, Mr. Trigona stated, he reported to Mark Zion that he had gone to the Property, but found only a stake there, with no paper; he also reported that he picked up both stake and paper at the Jeannette Glass Plant and at another Zion-owned property, on 6th Street in Jeannette, PA, but had been unable to locate either a stake or paper at the fourth Zion-owned site, on Chambers Avenue. (*Id.*, R.R. at 297a.) Mr. Trigona testified that over the next week, he spoke to Mark Zion by phone on four different occasions and each time they discussed the posted properties, including the Property. (*Id.*, R.R. at 298a.) He stated that approximately one month later, he spoke again to Mark Zion about the posted properties, and Mark Zion told him, "Oh, I got with [Mark Zion's father, Abraham Zion] and we got it handled." (*Id.*, R.R. at 299a.) Mr. Trigona testified that on the day of the tax sale, he received a

6

phone call from a friend at the courthouse who informed him that three of the four Zion-owned properties, including the Property, had been sold at the tax sale, but that the property on Chambers Avenue had not been sold. (*Id.*, R.R. at 300a.) Mr. Trigona stated that he hung up the phone and immediately telephoned Mark Zion to inform him, offering to go to the courthouse with a check, but Mark Zion again told him that he would take care of it. (*Id.*, R.R. at 301a.)

Mark Zion testified that Mr. Trigona never conveyed to him that the Property was posted for an upset tax sale; rather, he testified at a deposition and again at the March 25, 2015 hearing that the first time he learned that there were outstanding property taxes on the Property was either the day of the tax sale or the day after; he indicated that his conversations with Mr. Trigona were limited to conversations about environmental issues at another Zion-owned property, specifically the Jeanette Glass Plant. (August 19, 2014 Deposition Transcript, R.R. at 382a; March 25, 2015 Hearing Transcript, R.R. at 153a; Stipulated Facts, R.R. ¶¶ 3,7 at 126a.)

The Sheriff testified that he had discussed the posting of the Property with Mr. Trigona both before, and after he posted the Property. (March 25, 2015 Hearing Transcript, R.R. at 139a-140a.) The WCTCB and Moween Trust also offered Mark Zion's phone records demonstrating that numerous conversations occurred between Mark Zion and Mr. Trigona in the period beginning with the day the Property was posted through the day of the tax sale.

The trial court concluded that it was "clear…that [Zion] had actual notice of the Property being exposed for tax sale." (Trial Court Opinion and Order, R.R. at 199a.) The trial court opined that Mr. Trigona's testimony was:

> credible and supported by subsequent testimony, as it
> was substantiated by the testimony of [the Sheriff], who

7

confirmed that all of the alleged conversations between himself and Mr. Trigona took place. Further, witness Chelsea Rittenour further confirmed Mr. Trigona's testimony, indicating that he overheard conversations taking place between Mr. Trigona and Mr. Zion, confirming that Mr. Trigona told Mr. Zion that the properties were posted with notice of the tax sale. In addition, Mr. Trigona truthfully testified to occurrences which were possibly detrimental to his own character, including his taking the postings from the properties and hiding them at Mark Zion's instruction. The Court views all of Mr. Trigona's testimony as truthful, credible, and substantiated.

(*Id.*, R.R. at 202a.) The trial court further opined that in addition to Mr. Trigona's testimony, there was significant circumstantial evidence to show that Zion had actual notice of the sale of the Property, including the testimony regarding witnesses informing Mark Zion of the impending tax sale of not one, but all of his Westmoreland County properties together with Mark Zion's testimony that he knew that nonpayment of taxes can result in the loss of property.[5] (*Id.*, R.R. at 203a.) The trial court also determined that the posting of the Property had been proper. (*Id.*, R.R. at 204a.)

This Court has established that where actual notice is established, the formal requirements of notice need not be met. *Citimortgage, Inc. v. KDR Investments, LLP*, 954 A.2d 755, 760 (Pa. Cmwlth. 2008); *Cruder v. Westmoreland County Tax Claim Bureau*, 861 A.2d 411, 415 (Pa. Cmwlth. 2004); *Stanford-Gale v. Tax Claim Bureau of Susquehanna County*, 816 A.2d 1214, 1217

---

[5] The trial court also noted that notices of sale for other Zion properties in Westmoreland County were sent to the Fieldstone Road address, where Abraham Zion resided, and Mark Zion testified that he collected the mail at Fieldstone Road, which is the same location where the tax bills for the Property were sent by the tax collector and the tax bills were not returned as undeliverable. (Trial Court Opinion, R.R. at 202a.)

(Pa. Cmwlth. 2003); *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514, 517 (Pa. Cmwlth. 1998). In *Sabbeth*, our Court acknowledged that case law discussing what constitutes actual notice appears to be fact specific and fails to define the term "actual notice," stating:

> Black's Law Dictionary 1061-1062 (6[th] ed. 1990) defines actual notice as follows: Actual notice has been defined as notice expressly and actually given, and brought home to the party directly. The term "actual notice," however, is generally given a wider meaning as embracing two classes, express and implied; the former includes all knowledge of a degree above that which depends upon collateral inference, or which imposes upon the party the further duty of inquiry; the latter imputes knowledge to a party because he is shown to be conscious of having the means of knowledge. In this sense actual notice is such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry.

*Sabbeth*, 714 A.2d at 517. In *Sabbeth*, where the taxpayer received written notice but failed to open the envelope and worked at the subject property at the time it was posted, the Court found that the record was replete with facts which showed that the owner had *implied* actual notice of the tax sale and therefore had a duty to undertake further inquiry. *Id*. Similarly, in *Cruder*, the Court held that evidence supported a finding of *implied* actual notice where the taxpayer worked at the property each day and had paid three months of delinquent taxes just two days after his controller signed for the tax sale notice. 861 A.2d at 416. Zion argues that *Sabbeth* and *Cruder* are distinguishable and inapposite; here, Zion argues, it received no written notices from WCTCB and no Zion partner visited the Property at the relevant times.

9

In *Sabbeth*, where the trial court found credible the testimony of the property owner that she had received, but had not opened the notice of tax sale until the day of the sale, this Court rejected the tax claim bureau's argument that the owner's testimony was self-serving and unsupported by substantial evidence, noting that "it is well-settled that this Court is bound by the credibility determinations of the trial court." *Sabbeth*, 714 A.2d at 516. Likewise, we are bound by the determination of the trial court that all of Mr. Trigona's testimony was truthful, credible, and substantiated.

Accordingly, we find no error here. Zion's managing partner received - directly and repeatedly - in the form of conversations with Mr. Trigona, notice that a tax sale was scheduled for the Property. The evidence therefore supports a finding of *express* actual notice of the tax sale such that any failure by the WCTCB to comply with statutory requirements of RESTL were waived. We therefore discern no error or abuse of discretion in the trial court's order denying Zion's amended objections and exceptions to the tax sale and we affirm the trial court's order.

**JAMES GARDNER COLINS, Senior Judge**

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Zion Bullitt Avenue Limited Partnership, | : | |
| Appellant | : | |
| v. | : | |
| | : | No. 1977 C.D. 2015 |
| Westmoreland County Tax Claim Bureau | : | |
| | : | |
| v. | : | |
| | : | |
| Moween Trust | : | |
| Re: Tax Map No. 29-01-10-0-156 | : | |

## O R D E R

AND NOW, this 21st day of December, 2016, the order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Zion Bullitt Avenue Limited     :
Partnership,     :
        Appellant     :
     :
     v.     :  No. 1977 C.D. 2015
     :  Submitted: August 12, 2016
Westmoreland County Tax Claim     :
Bureau     :
     :
     v.     :
     :
Moween Trust     :
Re: Tax Map No. 29-01-10-0-156     :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT           FILED: December 21, 2016

      The majority holds that the notice provisions of the Real Estate Tax
Sale Law (Tax Sale Law)[1] may be disregarded where a tax claim bureau can show
that an individual with an investment interest in a partnership receives a telephone
call reporting that the partnership's real property has been scheduled for a tax sale.
Inexplicably, the majority sweeps aside our well-established precedent that a tax
claim bureau must strictly follow the written notice provisions of the Tax Sale
Law. Further, the "actual notice" of a limited partner does not constitute notice to

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101 – 5860.803.

the partnership, a separate legal person, whose general partner is a business corporation. Respectfully, I must dissent.

Zion Bullitt Avenue Limited Partnership owns real property in Westmoreland County. Its general partner is Zion Pennsylvania Corporation, and the Partnership's limited partners are Abraham Zion, Mark Zion, Joshua Zion, and Adina Zion. Four of the Partnership's Westmoreland County properties are located in Jeannette, for which the Tax Claim Bureau has a mailing address of 4630 Fieldstone Road, Riverdale, New York. One of the Partnership's Westmoreland County properties is located in Penn Borough, for which the Tax Claim Bureau has a mailing address of 41 Madison Avenue, New York, New York.

The 2010 tax invoices for the Partnership's Penn Borough property were returned to the Penn Borough taxing authority as undeliverable. When the taxes were not paid, Penn Borough's taxing authority forwarded the invoices to the Westmoreland Tax Claim Bureau for collection. On April 6, 2011, the Tax Claim Bureau sent a Notice of Return and Claim showing the outstanding property taxes for the year 2010. It sent the notice to the Madison Avenue address by certified mail. The mailing was returned as undeliverable. On May 7, 2012, the Tax Claim Bureau sent a Notice of Public Sale by certified mail, again to the Madison Avenue address. Again the notice was returned as undeliverable. The Tax Claim Bureau then sent a second notice by first class mail to the Madison Avenue address 30 days before the tax sale; posted the Penn Borough property with a notice of the sale; and published notice of the sale in newspapers of general circulation. On September 10, 2012, the Tax Claim Bureau sold the Partnership's Penn Borough

MHL-2

property at a tax upset sale. Thereafter, the Partnership filed a petition to vacate the sale.

The majority holds that strict compliance with the Tax Sale Law was not required because the trial court found, as fact, that one of the limited partners, Mark Zion, learned in a phone call that the Penn Borough property had been posted for a tax sale. The Partnership vigorously contests this finding of the trial court.[2] Regardless, the majority's holding departs from the statutory requirement, and our precedent, that a tax claim bureau must undertake an effort to locate the owner of property scheduled for a tax sale when notice of the sale is returned by the U.S. Postal Service as undeliverable.

Section 602(e) of the Tax Sale Law requires the tax claim bureau to give each owner of a property notice of the impending sale by certified mail. If the tax claim bureau does not receive a return receipt from every owner at least 10 days before the sale, the tax claim bureau must then give that owner notice by first class mail. Section 602(e) states:

> (e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
>
> > (1) *At least thirty (30) days before the date of the sale, by United States certified mail*, restricted

---

[2] The Partnership contends that the evidence does not support the trial court's finding that Mark Zion had "actual" notice by reason of a phone call from a contractor engaged to do construction for the Partnership. This caller filed a lien against the Partnership's property shortly after giving a deposition. The caller, now deceased, did not testify in court. The Partnership contends that, as a matter of law, the trial court could not make a credibility determination in favor of the caller without being able to view his demeanor and in light of his *animus* toward the Partnership. The Partnership also contends that the witness who supposedly corroborated the caller's deposition did not do so because that witness testified about the Partnership's properties in Jeannette, not the one in Penn Borough that was sold at the upset sale.

delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

(2) *If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale,* similar notice of the sale shall be given to *each owner who failed to acknowledge the first notice by United States first class mail,* proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. §5860.602(e) (emphasis added).

Section 607.1(a) of the Tax Sale Law[3] addresses what must be done when the certified mailing is returned to the tax claim bureau as unclaimed by any of the owners of the property. It states:

When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and *such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee* or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, *the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.* The Bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the

---

[3] Added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. §5860.607a(a).

MHL-4

county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. §5860.607a(a) (emphasis added). In short, where a tax claim bureau has doubt about whether a mailed notice of a tax sale has been received by the property's owner, it "must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him." *Id.*

Here, the Tax Claim Bureau knew, with certainty, that its notice was not received by the Partnership. Each of its mailings was returned as undeliverable. Nevertheless, it made no effort to "discover the whereabouts of [the Partnership] and notify [it]." *Id.* Specifically, the stipulation provides as follows:

> 23. Following return of the Notice of Claim marked undeliverable, the [Tax Claim Bureau] put the original in the file and undertook no further current efforts to obtain a different address to which to send the Notice of Claim or any other writings directed to the Property owner.
>
> ***
>
> 28. In this case, the [Tax Claim Bureau] sent a Notice of Public Sale out ... in May 7, 2012, via restricted delivery, to Zion at 41 Madison Ave., New York, NY 10010-2202 [and] ... [t]his notice was returned to the [Tax Claim Bureau] marked undeliverable.
>
> ***
>
> 30. The [Tax Claim Bureau's] file reflects that it did not undertake additional efforts to find another address for Zion for this property.

MHL-5

Stipulation ¶¶23, 28, 30; Reproduced Record at 129a-130a (R.R. ___). The majority holds that the Tax Claim Bureau was excused from making a "reasonable" effort to "discover [the Partnership's] whereabouts" because the trial court found, as fact, that one of the limited partners, Mark Zion, received a telephonic message from a third party that the Penn Borough property had been posted for a tax sale.

In reaching this conclusion, the majority relies upon *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514 (Pa. Cmwlth. 1998). In that case, the tax claim bureau effected actual notice of the tax sale by certified mail to the owner, which it followed with a first-class mailing, a posting of the property and notice publications in newspapers of general circulation. Stated otherwise, it undertook all of the notice requirements of the Tax Sale Law. This Court rejected the owner's effort to set aside the sale for alleged "technical difficulties in the notice sent to her by regular mail." *Id.* at 516. Notably, those "technical difficulties" are not identified in the opinion, but it is clear that the certified mailing was followed by a first class mailing.

The critical fact in *Sabbeth* was that the owner let the certified mailed notice, which was signed for at her office, sit on her desk for 53 days without opening the envelope containing the notice. She finally opened the envelope on the day of the sale, by which time the property had been sold. The trial court set aside the sale for the stated reason that the owner did not have actual notice. This Court reversed.

We held that the tax claim bureau satisfied its duty with the successful delivery of the certified mailing. We explained that the certified mailing gave the owner "actual notice of the tax sale of the subject property but [she] sought to

MHL-6

avoid the consequences of her inaction by claiming complete ignorance." *Id.* at 518. This Court has recognized that the *Sabbeth* holding was based upon the "peculiar combination of facts." *In re Dauphin County Tax Claim Bureau*, 834 A.2d 1229, 1234 (Pa. Cmwlth. 2003). *Sabbeth* did not establish a broad principle that if an owner has actual notice, by some means, then the tax claim bureau is excused from its statutory notice obligations.

Rather, *Sabbeth* stands for the proposition that a tax claim bureau does not have the responsibility to ensure that the owner, who received the certified mailing, then actually read the notice so delivered. We have previously explained that *Sabbeth* turned on the fact that the owner, who received the statutory notice 30 days before the sale, "simply declined to open the envelope." *Citimortgage, Inc. v. KDR Investments, LLP*, 954 A.2d 755, 761 (Pa. Cmwlth. 2008) (discussing *Sabbeth*).

Here, by contrast, as the trial court acknowledged, "it is uncontroverted that [the Partnership] did *not* receive written notice from the [Tax Claim Bureau] of the tax sale of the Property." Trial Court op. at 8 (emphasis added). The mailings were returned as undeliverable. The parties further stipulated that none of the limited partners visited the property at the relevant period of time or saw the posting on the Penn Borough property. No one with authority to act for the Partnership signed for, or received, the certified mailing of the notice of sale, as was the case in *Sabbeth*.

Nor does it matter, as the trial court supposed, that the Partnership did not submit a change of address form to the Tax Claim Bureau or that Mark Zion did not take the initiative to determine whether taxes were current. Trial Court op. at 8, 10. In *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa.

Cmwlth. 2003), this Court rejected the tax claim bureau's contention that the taxpayer had the responsibility to give the bureau notice of her change of address. This Court explained that "the focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the [b]ureau comply with the requirements of the statute." *Id*. (citations omitted). The taxpayer "did not have a duty to give the [b]ureau notice of her address change." *Id. See also Rivera v. Carbon County Tax Claim Bureau*, 857 A.2d 208, 217-18 (Pa. Cmwlth. 2004) (rejecting tax claim bureau's claim that taxpayer must provide a timely change of address). In *Wells Fargo Bank of Minnesota v. Tax Claim Bureau of Monroe County*, 817 A.2d 1196 (Pa. Cmwlth. 2003), this Court refused to excuse the tax claim bureau's failure to follow the notice requirements of the Tax Sale Law because Wells Fargo, the property's owner, did not check on property taxes when it purchased the property.

Section 602(e)(2) obligated the Tax Claim Bureau to "do *something* to try and locate the property owner before automatically mailing the second notice to the same address." *Rossi v. Indiana County Tax Claim Bureau*, 494 A.2d 526, 528 (Pa. Cmwlth. 1985) (emphasis in original). It had the "duty" to determine another address for the Partnership. This could have been easily done because the Partnership had another address listed with the Tax Claim Bureau for its Jeannette properties in Westmoreland County. This other address was also known to the Westmoreland County Assessment Office and to the tax collector for Penn Borough. *See* 72 P.S. §5860.602(e)(2).

Instead, the Tax Claim Bureau simply resent the second notice of sale to an address identified by the U.S. Postal Service as an undeliverable address. *Id*. Simply,

> a tax claim bureau may not ignore the mandatory additional notification requirements and proceed with a sale when mailed notification is unsuccessful or when other circumstances raise doubt as to its actual receipt.

*In re 1999 Upset Sale of Real Estate*, 811 A.2d 85, 90 (Pa. Cmwlth. 2002).

This Court has repeatedly set aside tax sales where the tax claim bureau has not made a reasonable effort to locate the taxpayer after a mailing is returned. *See, e.g., Dwyer v. Luzerne County Tax Claim Bureau*, 110 A.3d 223 (Pa. Cmwlth. 2015). This Court has also invalidated sales where the bureau undertook *some* effort to locate the taxpayer, but failed to conduct that search in accordance with the statute's terms. *See, e.g., 777 L.L.P. v. Luzerne County Tax Claim Bureau*, 111 A.3d 292, 294, 298 (Pa. Cmwlth. 2015); *Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 577 (Pa. Cmwlth. 2006). This precedent is controlling here.

It is a well-established principle that the tax claim bureau must strictly follow the notice requirements of the Tax Sale Law. The factual circumstances specific to *Sabbeth* are not present here because the Partnership did not "decline[ ] to open the envelope." *Citimortgage*, 954 A.2d at 761. The Partnership never received an envelope from the Tax Claim Bureau. When the mailing to the Partnership was returned as undeliverable, it was incumbent upon the Tax Claim Bureau to make a reasonable effort to locate the Partnership's whereabouts. The Tax Claim Bureau did nothing. It did not make even the modest effort of checking its own records for an alternate address for the Partnership.

In any case, Mark Zion's "actual notice" is irrelevant. The owner of the Penn Borough property was the Partnership, not Mark Zion.[4] The majority

---

[4] Section 102 of the Tax Sale Law defines "owner" as:

**(Footnote continued on the next page . . .)**

acknowledges that Mark Zion is a limited partner but concludes that his knowledge can be attributed to the Partnership. Mark Zion had "managing responsibility ... and knew what properties" the Partnership owned. Stipulation, ¶3; R.R. 126a. In addition,

> 7. Mark Zion was involved with the Property in varying degrees from at least 1986 through September 10, 2012.

Stipulation ¶7; R.R. 126a. That a limited partner is active does not make that limited partner a general partner or alter ego of the partnership.

Section 8523 of the Pennsylvania Revised Uniform Limited Partnership Act,[5] states

---

**(continued . . .)**

> the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property; as to property having been turned over to the bureau under Article VII by any county, "owner" shall mean the county.

72 P.S. §5860.102.

[5] The Pennsylvania Revised Uniform Limited Partnership Act, 15 Pa. C.S. §§8501-8594, was repealed on November 21, 2016, and replaced by the Pennsylvania Limited Partnership Act of 2016, H.B. 1398, 200th Gen. Assemb., Reg. Sess. (Pa. 2016) (effective April 1, 2017). Notably, Section 8632 of the Pennsylvania Limited Partnership Act of 2016 specifically states that a limited partner is not an agent of the limited partnership. Section 8632 provides:

> (a) General Rule. – A limited partner is not an agent of a limited partnership solely by reason of being a limited partner.

> (b) Creation of partnership liability. – A person's status as a limited partner does not prevent or restrict law other than this chapter from imposing liability on a limited partnership because of the person's conduct.

15 Pa. C.S. §8632 (effective April 1, 2017). In short, the applicable legal principle will not change under the new statute.

[a] limited partner is not liable, solely by reason of being a limited partner, under an order of a court or in any other manner for a debt, obligation or liability of the limited partnership of any kind or for the acts of any partner, agent or employee of the limited partnership.

15 Pa. C.S. §8523(a). Section 8523, which repealed former 59 Pa. C.S. §521, eradicated the previous rule that a limited partner is liable for the obligations of the limited partnership if the limited partner participates in the control of the business. The comment to Section 8523 states that as a result of this change,

a limited partner is not liable in the capacity of a limited partner for the obligation of the partnership, *regardless of what role the limited partner may play in the management or control of the business*. That result is separate from the question of whether a limited partner who is also an officer or employee of the limited partnership will be liable for his or her own acts in the other capacity. A person who is a general partner and also holds an interest as a limited partner will, of course, be liable for the obligations of the partnership in the capacity of a general partner.

15 Pa. C.S. §8523 (Committee Comment 2001) (emphasis added).

In short, notice to a limited partner does not constitute notice to the limited partnership itself. The result can be different if the limited partner is also a general partner or an officer or employee of the limited partnership. Here, however, the stipulation states only that Mark Zion had some "managing responsibilities" for the Partnership. It does not provide that he had authority to act on behalf of the Partnership. Nor was there a stipulation that he served as an officer of the corporation that was the general partner of the Partnership.

A limited partner's "actual notice" is of no consequence. Our Supreme Court has said "[a]s a matter of law, notice to a limited partnership can never constitute notice to a limited partner." *Department of Revenue for the*

*Bureau of Accounts Settlement v. McKelvey*, 587 A.2d 693, 695 (Pa. 1991). Although stated in the context of notice to a limited partnership proving insufficient to constitute notice to a limited partner, the reasoning applies equally here. Therefore, a finding that Mark Zion had actual notice of the sale is insufficient to establish notice to Zion.

Because the Tax Claim Bureau made no effort, reasonable or otherwise, to locate the Partnership when its certified mailing of the sale notice was returned as undeliverable, I would set aside the sale of the Partnership's property. The majority's overbroad reading and application of *Sabbeth* erodes our well-established precedent that strict compliance with the Tax Sale Law is the order of the day.

_____
MARY HANNAH LEAVITT, President Judge